**Robert D. RUFENACHT and Willard V. Palmer, d/b/a R & P Cattle Co., Plaintiffs,**

v.

**LA CARTE ENTERPRISES, INC., La Carte Farms Division, John V. La Carte, and Jack La Carte, Defendants.**

**Civ. A. No. 79–157 H.**

United States District Court, W. D. Pennsylvania.

Feb. 26, 1979.

As Amended April 4, 1979.

Thomas C. Murcko, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiffs.

Ralph H. German, Thomas J. Purcell, Cooper, German, Kelly & Smith, Pittsburgh, Pa., for defendants.

## OPINION

DIAMOND, District Judge.

Plaintiffs brought this diversity suit, inter alia, to replevy certain of their cattle which are now in defendants' possession. The matter before the court is plaintiffs' motion for a writ of seizure by which they seek to obtain immediate possession of the cattle pending a final determination of all claims made in their complaint.[1] Following an evidentiary hearing, briefs and oral argument, we conclude that the motion should be granted.

### FINDINGS OF FACT

1. Plaintiff Robert D. Rufenacht is a citizen of Arizona, plaintiff Willard V. Palmer is a citizen of Indiana, and they are engaged in the business of buying and selling cattle under the name of R & P Cattle Co.

2. Defendants John La Carte and Jack La Carte are citizens of Pennsylvania and operate the corporate defendant, La Carte Enterprises, Inc., La Carte Farms Division (La Carte, Inc.), which is a Pennsylvania corporation with its principal place of business in Indiana County, Pennsylvania.

---

1. The writ of seizure is a remedy provided by Rule 1075, et seq., of the Pennsylvania Rules of Civil Procedure, 42 Pa.C.S.A., which (as the parties agree) is made applicable to appropriate actions in this court by Rule 64, Fed.R.Civ.P. *Savada Bros., Inc. v. Conville*, 8 F.R.D. 127 (M.D.Pa.1948).

3. The principal business of La Carte, Inc., is the operation of a feedlot farm consisting of 1,000 acres located near Indiana, Pennsylvania, at which for a fee it feeds and prepares cattle belonging to others for ultimate sale and slaughter.

4. On March 25, 1977, plaintiffs and defendants entered into a written "Feeding Agreement" under which defendants agreed to feed and prepare for sale and slaughter cattle shipped to them by plaintiffs and plaintiffs agreed to pay defendants a monthly fee based on the amount of weight gained by each steer.

5. Pursuant to that feeding agreement, plaintiffs shipped a number of cattle, including those here in suit, to the defendants' feedlot.

6. Although the written feeding agreement expired by its terms on September 30, 1978, the parties extended certain of its terms orally, and these remained in effect until the instant dispute resulted in a termination of the parties' business relationship in January, 1979.

7. The following provisions of the feeding agreement were among those which were extended orally by the parties:

"3. *Duties Of Feeder* : Feeder [Corporate Defendant] agrees to perform the following duties:

"(b) Feeder will assist Owner [Plaintiffs] in selling the cattle for and on behalf of Owner when in Feeder's opinion they are ready for slaughter, to purchasers of Owner's choice and for price which in Owner's opinion is a fair market price."

"8. *Default* : The Owner hereby grants to Feeder a lien upon the described cattle for all sums falling due and owing to Feeder under this Agreement, in addition to any other liens granted by law. In the event Owner defaults in the payment of monthly compensation to Feeder under paragraph 4 above within ten days after the date of each monthly billing, then and in such event Feeder shall have the option of terminating this Agreement by written notice to Owner; and then and in such event Feeder shall

have the right and privilege of enforcing the lien granted herein by selling the cattle of Owner after given ten days written notice to Owner of the time and place of such proposed sale . . . ." [The remaining provisions of Section 8 of the Agreement are not relevant to the issues now before the court]

8. On January 30, 1979, because of a dispute over fees charged by the defendants under the feeding agreement, the plaintiffs advised the defendants that plaintiffs would no longer utilize defendants' feedlot and demanded that defendants surrender possession of all of plaintiffs' cattle then feeding at defendants' farm.

9. Defendants surrendered most of the plaintiffs' cattle, but have refused to release the 201 head which are the subject of this action.

10. The majority of the 201 head have not yet reached "choice" condition.

11. The plaintiffs have never sold a steer for slaughter unless advised by the defendants that it had reached "choice" condition or that it did not have the capacity (for genetic or other reasons) to reach that condition.

12. The value of the 201 head is approximately $132,000.

### DISCUSSION AND CONCLUSIONS OF LAW

Rule 1075, Pa.R.Civ.P., makes preliminary relief available to a plaintiff in a replevin action by providing that the subject property may be seized prior to judgment under a writ of seizure issued pursuant to order of court. To be entitled to the writ, petitioner must establish the *probable validity* of his claim to the property (Rule 1075.1(e), Pa.R. Civ.P.) and then post a bond in double the amount of the value of that property (Rule 1075.3, Pa.R.Civ.P.).

In Blossom Products Corporation v. National Underwear Company, 325 Pa. 383, 191 A. 40 (1937) the Supreme Court of Pennsylvania stated that "The issue in a replevin action is confined to the question

of title and the exclusive right to possession . . . and all matters foreign thereto must be excluded from consideration and are not available as defenses. . . ." p. 386, 191 A. p. 42.

The Court then held that the plaintiff ". . . made out a prima facie case by presenting uncontroverted evidence of its title to the . . . [goods sought to be replevied] which entitled it to immediate, exclusive possession of the property as. against [the] . . . [defendant] and the burden shifted to . . . [defendant] to prove *property*, general or special, vesting it with the right to retain possession, or *at least a lien, giving it the right to a conditional verdict* . . . ." p. 387, 191 A. p. 42 (emphasis supplied)

The Court further held that "A contract providing for delivery of materials by the owner to another for the performance of specified services upon them does not, as against the owner, vest any property, special or general, in the one who is to perform the services, nor does such a contract confer upon him a right to retain possession of the goods until performance of the contract has been completed or it has been breached or canceled in a lawful manner. . . ." p. 387, 191 A. p. 42.

In *Wensel v. Reed*, 161 Pa.Super. 488, 55 A.2d 548 (1947) the court made it quite clear that the rights of a lienholder to the subject property in a replevin action were limited to a counterclaim (present Rule 1082, Pa.R.Civ.P.) and not to possession, since his ". . . lien was fully protected by the plaintiff's bond . . . ." p. 489, 55 A.2d p. 549.

In fact, the court held in *Wensel* that the defense of a lien is so incompatible with a right to possess that if such a defense is pleaded the defendant must immediately give up possession of the subject property and is liable for damages for its "unlawful detention." p. 491, 55 A.2d 548.

The holding in *International Electronics Co. v. N.S.T. Metal Products Co.,* 370 Pa. 213, 88 A.2d 40 (1972), cited by counsel for the defendants, is not inconsistent with the above principles and in no way supports the

defendants' right to retain possession of the cattle here in suit. .*International* cites the holding in *Blossom* with approval and distinguishes the cases on the basis that in *International,* unlike in Blossom, under the specific terms of the contract between the parties the defendant had the explicit right to retain possession of the subject goods for twelve months or until the contract had been cancelled or terminated. p. 220, 88 A.2d 40.

Here defendants concede that plaintiffs are the owners of the cattle in question. However, they argue that plaintiffs are not entitled to possession for either of two reasons: (1) defendants are entitled to a contractual lien under Section 8 of the Agreement and also to a common-law agistor's lien, and (2) Section 3(b) of the Agreement gives them the right to retain possession of the subject cattle until in defendants' opinion the cattle are ready for slaughter.

We believe that *Blossom* and, especially, *Wensel* make it absolutely clear that a lienholder does not thereby have a possessory interest in replevied property which will defeat the owner's right to immediate possession. The lienholder is protected by the plaintiff's bond, may not even retain possession by filing a counterbond (Rule 1076(a), Pa.R.Civ.P.), but may assert a counterclaim and thereby have his claim protected by a conditional verdict (Rule 1082(a), (b), Pa.R.Civ.P.) under which any ultimate award of possession to plaintiff is conditioned upon his payment of the amount of the counterclaim proved by the defendant.

Again, *International Electronics* does not help the defendants. There, as we have indicated, the court held that the defendant's right to possession was grounded on the particular terms of the contract between the parties, and so far as a lien was concerned, the court simply considered whether or not one *existed* and did not go further and discuss the *rights* of a lienholder in a replevin action.

Next, we consider whether Section 3(b) of the Agreement vests a special possessory interest in cattle in defendants, and we agree with plaintiffs that it does not.

First, Section 3(b) sets forth one of a number of *duties* which defendants agree to perform, it does not even purport to confer a *right* on the defendants, except, perhaps, the right to *refuse* to "assist owner in selling the cattle" until in defendants' opinion they are ready for slaughter.

Second, the defendant Jack La Carte testified that while plaintiffs never sold any cattle until they reached choice condition and, hence, were in optimum condition for sale and slaughter, had plaintiffs told defendants to sell cattle prematurely they would have done so. This indicates to us that the parties did not modify by conduct the plain import of 3(b) so as to give the defendants a right to control the possession or disposition of the cattle.

Finally, we note that defendants offered no proof to support any greater contractual right under Section 8 of the Agreement than that conferred by an agistor's lien; i. e., no proof was offered to show a default, or notice of intent to sell and so forth.

For the foregoing reasons, the plaintiffs' motion for a writ of seizure will be granted and the parties are directed to settle on the terms of the security which plaintiffs will file as agreed at oral argument. Upon the filing of said security, the writ will issue.