PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11694

_____

D. C. Docket No. 96-01103-CV-A-N

HENRY LEE "LEROY" PICKETT,
SAM BRITT,
PAUL HORTON,
MIKE CALLICRATE,
JIM BOWER,
PAT GOGGINS,
JOHNNY SMITH, ET AL.,

Plaintiffs-Appellees,

versus

IOWA BEEF PROCESSORS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(April 20, 2000)**

Before CARNES, BARKETT and WILSON, Circuit Judges.

BARKETT, Circuit Judge:

Iowa Beef Processers, inc. ("IBP") brings this interlocutory appeal from the district court's decision to grant the Plaintiffs' motion to certify this case as a class action under Federal Rule of Civil Procedure 23(b)(3). Henry Lee Picket, Sam Britt, Paul Horton, Mike Callicrate, Jim Bower, Pat Coggins, Johnny Smith, Stayton Weldon, Lovel Blain and David Smith (collectively the "Plaintiffs") are cattle producers alleging that IBP's practices violate the Packers and Stockyards Act, 7 U.S.C. § 181 et seq. (1999) ("the Act") and seeking to sue IBP on behalf of themselves and others similarly situated for damages and injunctive relief. The class certified consists of "all cattle producers who had sold fed cattle directly to IBP" since February 1994.

## BACKGROUND

Plaintiffs are cattle producers who sell "fed cattle," i.e., cattle raised at feedyards for slaughter, to IBP.[1] Such producers have a narrow window of opportunity in which to sell their fattened cattle while they are at optimum weight. The standard method for purchasing cattle is for packers to inspect pens of cattle at the feedyards and to bid on the cattle for sale. This practice is known as the "spot market," and sales on the spot market are referred to as "cash sales." As an

---

[1] In industry parlance, IBP is known as a "packer," and it purchases its cattle from owners of feedyards, who are known as "producers."

alternative to the spot market, producers can also sell their cattle by entering into "forward contracts" or "marketing agreements" with packers. Under a forward contract, the packer and the producer agree on the price to be paid for the cattle weeks or months before the animals are ready for slaughter. Forward contracts offer producers the advantage of locked-in prices and protect them against market fluctuations. Marketing agreements are a more extended version of forward contracts. Under such agreements, a producer promises to sell most of its cattle to a packer at prices determined by a negotiated formula, which can be adjusted after slaughter according to the quality of the beef.

The United States Department of Agriculture defines the cattle that are controlled by or committed to a packer more than two weeks prior to slaughter as "captive supply." Plaintiffs allege that engaging in forward contracts and marketing agreements in order to establish a captive supply enables IBP to depress the market at strategic times in order to force producers to accept artificially low prices for their fattened cattle. Plaintiffs contend that, because IBP controls a large quantity of cattle through these means, it can slaughter the cattle it controls, or threaten to do so, in order to force producers to choose between selling their cattle at an unacceptably low price or being left without a buyer for their cattle.

3

Plaintiffs allege that, in the context of the highly concentrated market for beef cattle, IBP's captive supply practices violate § 202 of the Packers and Stockyards Act, 7 U.S.C. § 192, which provides in relevant part:

It shall be unlawful for any packer . . . to:

(a)     Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or

(b)     Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. . . .

Plaintiffs argue that forward contracts and marketing agreements are preferential to the producers who sell under such agreements and thus are unjustly discriminatory because they can be used to coerce producers who choose to sell on the spot market into accepting lower prices for their cattle.

Plaintiffs first attempted to bring these claims on behalf of a class consisting of all cattle producers in the country who had "raised, handled, fed and produced livestock and/or cattle for sale on the open market" since January 1994. The district court declined to certify such a class. The district court first noted that, because the proposed class included members who had been disadvantaged by IBP's captive supply practices as well as those who had derived an advantage from

4

those practices, it could not meet Federal Rule of Civil Procedure 23(a)'s requirements that the named plaintiffs be typical of the class and that they adequately represent the interests of the class. Pickett v. Iowa Beef Processers, inc., 182 F.R.D. 647, 651-55 (M.D. Ala. 1998), citing Fed. R. Civ. P. 23(a)(3) and (4). Furthermore, the district court found that Plaintiffs had not met their burden under Rule 23(b)(3) to show that common questions of law or fact predominate and that the class action provides a superior means of adjudicating the controversy, as the court would be unable to establish a violation of the Act without consideration of individual transactions. Id. at 658-61.

Plaintiffs moved for reconsideration,[2] narrowing the class to include only all cattle producers "who had sold fed cattle directly to IBP" since February 1994. At the hearing on the proposed narrowed class, Plaintiffs presented the testimony of Professor Catherine Durham to demonstrate that the class action procedure could efficiently address the damages claims of each individual producer. Professor Durham testified that an econometric model could be developed that would be capable of demonstrating that IBP's captive supply practices have a downward effect on prices for fed cattle and could specify the effect of IBP's captive supply practices on the members of the plaintiff class. However, Professor Durham

---

[2] The case was reassigned to a different judge prior to Plaintiffs' motion for reconsideration.

5

offered no such model, and she acknowledged that no such model currently exists because no researcher has yet been able to assemble the requisite data. The district court granted the motion for reconsideration and certified the proposed class consisting of "[a]ll cattle producers who sold fed cattle directly to IBP from February 1994 through and including the date of certification," a class with at least 15,000 members. IPB appeals this determination.

We review a district court's certification of a class under Rule 23 for abuse of discretion. Jackson v. Motel 6 Mutipurpose, Inc., 130 F.3d 999, 1003-1004 (11th Cir. 1997). However, to the extent that the issue involves the interpretation of the Federal Rules of Civil Procedure, we review de novo. Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1388 n.30 (11th Cir.) (en banc), cert. denied, 119 S. Ct. 545 (1998). Rule 23(f) provides for our jurisdiction over interlocutory appeals from a district court's order granting class certification, and we limit our discussion to that issue. We do not address the merits of Plaintiffs' claims.

**DISCUSSION**

In order to maintain a class action, the proposed class must satisfy all the requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b). Jackson, 130 F.3d at 1005. Rule 23(a) provides that a class may be certified if the following requirements are met: (1) numerosity: the class is not so numerous

that joinder of all members is impracticable; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; and (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In this case, the district court certified the class, finding that it satisfied all of the requirements of Rule 23(a) as well as Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[3]

IBP does not dispute that the plaintiff class satisfied the numerosity and commonality requirements provided in Rule 23(a)(1) and (2). IBP argues that the class should not have been certified because the district court erred in: (1) concluding that Plaintiffs could "fairly and adequately protect the interest of the class," as required under Rule 23(a)(4), since class members have antagonistic interests regarding the outcome of this suit, and several of its members would

---

[3] "The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

actively oppose the remedy that Plaintiffs seek; (2) finding that issues common to the class predominate, as required under Rule 23(b)(3), because it failed to consider that the Act requires that a "rule of reason" be applied in order to assess whether contracts and agreements are discriminatory or unfair and that such an inquiry cannot be undertaken on a class-wide basis; and (3) certifying a class based on a proposed expert study without first requiring that the viability of that study be demonstrated. Because we agree that this plaintiff class cannot satisfy the adequacy requirement of Rule 23(a)(4), we do not address IBP's additional arguments.

Rule 23(a)(4) requires that parties representing a class fairly and adequately protect the interests of class members. "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1768 at 326 (2d ed. 1986). However, a party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy. Id. at 326-27; 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.25 at 3-139 to 141; § 3.26 at 3-143 to 144 (3rd ed. 1992). Thus, a class cannot be certified when its members have opposing interests

8

or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class. See e.g., Bieneman v. City of Chicago, 864 F.2d 463 (7th Cir. 1988) (denying certification of a class of all landowners in the vicinity of an airport because, while plaintiffs claimed that the airport decreased the value of their land, other landowners tremendously benefitted from the proximity of the airport); Auto Ventures, Inc. v. Moran, 1997-1 Trade Cas. (CCH) ¶ 71,779, 1997 WL 306895 (S.D. Fla. 1997) (refusing to certify a class of Toyota dealers because "the class collapses into distinct groups of winners and losers"). In a case involving claims very similar to those at issue here, a district court refused to certify a class of cotton farmers who had entered into forward contracts. Bolin Farms v. American Cotton Shippers Ass'n, 370 F. Supp. 1353, 1357 (W.D. La.), aff'd without op. sub nom. Jones v. Allenberg Cotton Co., 505 F.2d 732 (5th Cir. 1974). The court ruled that class certification was improper because many farmers benefitted from the forward contracts being challenged. Id.

Notwithstanding that Plaintiffs are challenging as discriminatory the forward contracts and marketing agreements between IBP and producers, the class certified in this case includes not only all cattle producers who have sold fed cattle to IBP on the spot market but also all cattle producers who have or had forward contracts and marketing agreements with IBP. Thus, the class includes those who claim

9

harm from the very same acts from which other members of the class have benefitted. Moreover, in addition to damages, Plaintiffs seek an injunction that would prohibit IBP from using such purchasing arrangements in the future. Such an injunction would impose a significant restriction on the way these producers do business.

We conclude that, under these circumstances, the Plaintiffs could not possibly provide adequate representation to a class that includes producers who willingly entered into forward contracts and marketing agreements with IBP as well as those who complain of and claim harm from the practice. We conclude that the district court erred in certifying the class. Accordingly, the District Court's order certifying the plaintiff class is REVERSED and the case is remanded to the District Court for further proceedings.