**Henry Lee PICKETT, et al., Plaintiffs,**

v.

**IBP, INC., Defendant.**

**No.  Civ. 96–A–1103–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 18, 2000.

Ernest C. Hornsby, Jr., Larry Wade Morris, Morris, Haynes & Hornsby, Alexander City, AL, Randy Beard, Beard & Beard, Guntersville, AL, Stephen K. Griffith, Knight & Griffith, Cullman, AL, Joe R. Whatley, Jr., Andrew Clay Allen, Whatley Drake, L.L.C., Birmingham, AL, David A. Domina, Nora M. Kane, Domina Law PC, Omaha, NE, for Henry Lee "Leroy" Pickett, Mike Callicrate, Pat Goggins, Johnny Smith and W.J. Rothwell Ranch Company.

Lee H. Copeland, Richard H. Gill, George W. Walker, III, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, William G. Schopf, Jr., Patrick J. Heneghan, Schopf & Weiss, William H. Baumgartner, Jr., Charles W. Douglas, Sidley & Austin, Chicago, IL, for Iowa Beef Processors.

John E. Bloomquist, Doney, Crowley & Bloomquist, P.C., Helena, MT, for Montana Stockgrowers Association and Southeastern Montana Livestock Association.

David G. Velde, Gaffaney & Velde, Alexandria, MN, for National Farmers Union.

Charles F. Holum, Denver, CO, for Rocky Mountain Farmers Union, South Dakota Farmers Union and National Farmers Union (Canada).

Page Dringman, Josephson, Lovell & Dringman, Big Timber, MT, for Crazy Mountain Farmers Stockmen Association.

Jay N. Galt, Marjorie McCullough, White, Coffey, Galt & Fite, Oklahoma City, OK, for Oklahoma State Union of the Farmers Educational and Cooperative Union of America.

Robert D. Blackman, Pueblo, CO, for Colorado Cattlemen's Association.

Randy Beard, Beard & Beard, Guntersville, AL, David A. Bradsky, Bradsky, Bradsky & Bradsky, PC, Rapid City, SD, for American Cowman's Association.

Gordon W. Schnell, Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, ND, for North Dakota Stockmen's Association (NDSA).

Lynn A. Hayes, Farmers' Legal Action Group, Inc., St. Paul, MN, for Western Organization of Resource Councils.

Steve Scanlin, Boise, ID, for Idaho Rural Council.

Scott Polikov, Austin, TX, for Wilson County Farm Bureau, Caldwell County Farm Bureau, Guadalupe County Farm Bureau, Jackson County Farm Bureau, Victoria County Farm Bureau, South Texas Hereford Association, Calhoun County Farm Bureau, Karnes County Farm Bureau and Gonzales County Farm Bureau.

Kenneth E. Vines, U.S. Attorney's Office, Montgomery, AL, for Secretary of Agriculture of the United States of America.

## MEMORANDUM OPINION

STROM, Senior District Judge.

This matter is before the Court on the plaintiffs' "Motion to Define and Recertify Class and Conform Class Definition with Court of Appeals Mandate." (Filing No. 383). For the following reasons, the motion will be denied.

### I. Factual Background

Plaintiffs are cattle producers who filed this lawsuit on July 11, 1996, alleging that Iowa Beef Processors ("IBP") violated the Packers and Stockyards Act ("PSA"), 7 U.S.C. § 181 *et seq.* Plaintiffs claim that IBP assembled a large supply of cattle for slaughter through a variety of agreements, which the plaintiffs refer to as "captive supply." [1] Plaintiffs identify three types of practices used by IBP which they consider captive supply: forward contracts, marketing agreements and joint-venture arrangements (Filing No. 383). Plaintiffs claim that the use of "captive supply" unfairly depresses the price paid for cattle. Specifically, plaintiffs contend that IBP unfairly sets a low price it will pay for cattle and when plaintiffs reject that price as too low, IBP slaughters or threatens to slaughter cattle from its own captive supply, leaving the plaintiffs without a buyer for their cattle. Because fattened cattle must be sold quickly while at optimum weight, the plaintiffs contend they are forced to accept the lower price. Plaintiffs allege that by using captive supply agreements in this way, IBP reduces its need to participate in the cash market. As a result, plaintiffs claim that these agreements to take ownership of cattle weeks in advance violate the PSA because they are entered into for the purpose or with the effect of reducing the cash market price.

### II. Procedural History

In plaintiffs' original "Motion for Class Certification," they proposed certifying a class of all cattle producers who had "raised, handled, fed, and produced livestock and/or cattle for sale on the open market" since January of 1994. (Filing Nos. 31, 32). Judge W. Harold Albritton, Chief Judge of the United States District Court for the Middle District of Alabama, denied class certification in an order dated September 15, 1998 (Filing No. 180); See *Pickett v. IBP, Inc.,* 182 F.R.D. 647 (M.D.Ala.1998). On September 29, 1998, plaintiffs filed their "Motion to Reconsider Order of September 15, 1998, and for the Court to Certify a More Limited Class Than Previously Requested." (Filing No. 185). IBP filed a response, arguing that the motion to reconsider was procedurally improper because it offered no new evidence or law as required by Fed.R.Civ.P. 59(e). Subsequently, the case was assigned to Senior United States District Court Judge, Lyle E. Strom. This Court ruled that plaintiffs' motion should be treated as an amended motion for class certification under Rule

---

1. The term "captive supply" has been defined by the USDA as "cattle that are controlled by or committed to a packer more than 2 weeks prior to slaughter." *See USDA, GIPSA report, Evaluation of Agency Efforts to Monitor and Investigate Anticompetitive Practices in the Meat Packing Industry* (Feb.1997); *USDA, GIPSA report, Concentration in the Red Meat Packing Industry* (Feb. 1996).

23(c)(1) for certification of a more limited class (See Filing No. 199). The Court heard oral arguments on March 12, 1999, and on April 29, 1999, granted plaintiffs' motion to certify a more limited class consisting of:

> [a]ll cattle producers who sold fed cattle directly to IBP from February 1994 through and including the date of certification.

(Filing No. 210). The defendant, pursuant to Federal Rule of Civil Procedure 23(f), appealed the Court's order.

On appeal to the Eleventh Circuit, IBP argued:

> that the class should not have been certified because the district court erred in: (1) concluding that Plaintiffs could "fairly and adequately protect the interest of the class," as required under Rule 23(a)(4), since class members have antagonistic interests regarding the outcome of this suit, and several of its members would actively oppose the remedy that Plaintiffs seek; (2) finding that issues common to the class predominate, as required under Rule 23(b)(3), because it failed to consider that the Act requires that a "rule of reason" be applied in order to assess whether contracts and agreements are discriminatory or unfair and that such an inquiry cannot be undertaken on a class-wide basis; and (3) certifying a class based on a proposed expert study without first requiring that the viability of that study be demonstrated.

*Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000). The Circuit Court reversed and remanded the matter, finding that the plaintiffs had not satisfied the "adequacy" requirement of Rule 23(a)(4). *Id.* IBP's additional challenges to the certification order were not addressed by the Circuit Court. *Id.* On May 24, 2000, plaintiffs filed their "Motion to Define Class in Accordance with Opinion of the United States Court of Appeals for the Eleventh Circuit." (Filing No. 383). The parties submitted briefs. On September 15, 2000, a hearing was held on the issue of class certification. The matter is now ready for ruling.

## III. DISCUSSION

### A. CLASS CERTIFICATION

The burden is on the party who seeks to certify a class to show that the prerequisites of Rule 23 are established. *Rutstein v. Avis Rent–A–Car Systems, Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000); *Perry v. Household Retail Servs. Inc.,* 180 F.R.D. 423, 430 (M.D.Ala.1998). An action may be maintained as a class action only if all four prerequisites of Rule 23(a) are satisfied and, in addition, one of the three subsections of Rule 23(b) is met. *Rutstein,* 211 F.3d at 1233–34; *Heaven v. Trust Company Bank,* 118 F.3d 735, 737 (11th Cir.1997); *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). In *Pickett v. IBP,* the Eleventh Circuit stated:

> Rule 23(a) provides that a class may be certified if the following requirements are met: (1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: questions of law or fact are common to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; and (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class.

*Pickett,* 209 F.3d at 1279 *citing* Fed.R.Civ.P. 23(a).

The Circuit Court reversed the order certifying a plaintiff class because the plaintiffs had not satisfied the adequacy requirement of Rule 23(a). (Filing No. 367); See FED. R.CIV.P. 23(a)(4). According to the Circuit Court, the class included cattle producers who sold fed cattle to IBP on the spot market as well as cattle producers who entered into forward contracts and marketing agreements with IBP. *Pickett,* 209 F.3d at 1280. Judge Barkett, writing for the Circuit Court, explained that the class could not be certified because it included individuals who claim harm from "the very same acts which other members of the class have benefitted." *Id.* Therefore, a conflict existed between the proposed class members which made it impossible for the plaintiffs to provide adequate representation. *Id.* The Circuit Court also commented that the injunctive relief sought by the plaintiffs would impose a "significant

restriction" on producers who currently have marketing agreements with IBP or wish to enter into marketing agreements with IBP in the future. *Id.* The Circuit Court held:

> under the circumstances, the plaintiffs could not possibly provide adequate representation to a class that includes producers who willingly enter into forward contracts and marketing agreements with IBP as well as those who complain of and claim harm from the practice.

*Pickett,* at 1280.

Plaintiffs have persisted in their effort to certify a plaintiff class. Claiming to have remedied the defects which caused the Circuit Court to reject the previous class, the plaintiffs ask the Court to now certify a class consisting of:

> [a]ll cattle producers who sold fed cattle directly to IBP from February 1994 through and including 60 days before class notification (or the date approved by the Court), on the cash market. The class excludes all transactions based on forward contracts, marketing agreements, and joint venture agreements.

(Filing No. 383). According to the plaintiffs this class satisfies the adequacy requirement of Rule 23(a)(4).

For the Court to certify a class representative, plaintiffs must fairly and adequately protect the interest of the class. FED.R.CIV.P. 23(a)(4). "The adequate representation inquiry involves questions of whether the plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and of whether the plaintiffs have interests antagonistic to those of the rest of the class." *Taylor,* 181 F.R.D. at 517; *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985). As the Eleventh Circuit has made clear, "[a] class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett,* at 1280.

Pursuant to the guidance provided by the Eleventh Circuit, the Court begins its evaluation by considering whether plaintiffs'

proposed class include producers who willingly enter into forward contracts and marketing agreements with IBP as well as those who complain of, and claim harm from, the practice.

The class proposed by the plaintiffs, while excluding *transactions,* does not exclude the *producers* who enter into captive-supply transactions (forward contracts and marketing agreements) with IBP. IBP admits that the plaintiffs' proposed class definition is susceptible to two different interpretations. According to IBP, the plaintiffs' exclusion of "transactions based on forward contracts, marketing agreements, and joint venture agreements" could be interpreted to exclude the *producers* who have engaged in these transactions. IBP also suggests the class proposal could also be construed as excluding from consideration the captive-supply *transactions.* The distinction may be immaterial. According to IBP, under either construction a conflict exists between the class members which precludes class certification (Filing No. 388).

The plaintiffs clarified this matter at the September 15 hearing by explaining to the Court, "... even if you were a mixed seller with 99 percent cash transactions and 1 percent captive, you're within our class." (*Transcript of Sept. 15, 2000, Proceedings* at 14.) Producers qualify for membership in the plaintiffs' proposed class by engaging in a cash sale with IBP during the class period. According to the plaintiffs, the fact that the same producer also engaged in forward contracts or marketing agreements with IBP during the class period does not foreclose class membership. Put another way, the class only *excludes* the producers who conducted business with IBP solely though captive-supply transactions.

By including mixed sellers [2] in the class, the plaintiffs admit that class will include producers engaging in only a percentage of cash transactions. Because the only requirement for class membership is conducting a cash transaction with IBP during the class period, the plaintiffs have opened the door of class membership to both the producers en-

---

**2.** Producers who engage in both captive-supply transactions and cash transactions.

gaging in predominately cash transactions and the producers engaging in predominately captive-supply transactions. The plaintiffs have provided the Court no evidence indicating that the interests of producers who have entered into primarily captive-supply transactions are harmonious with the interests of producers who conduct sales on a primarily cash basis. The defendant, in contrast, has provided evidence showing an actual conflict exists between the class members. See *Response of Defendant IBP, Inc. to Plaintiffs' Motion to Recertify Class* at 24–42 (Filing No. 403) (identifying the following producers as members of the plaintiffs' proposed class who have interests which clash with those of the plaintiffs: Paul Engler, Chairman and Chief Executive Officer of Cactus Feeders in Amarillo, Texas (Exhibit 542 [3]); Walter Myers, owner and operator of Cross M Feedyard in Rocky Ford, Colorado (Exhibit 68 [4]); James Herring, President and Chief Executive Officer of Friona Industries in Amarillo, Texas (Exhibit 60 [5]); Jerry Kuckelman, manager of Farleigh Feedyards in Scott City, Kansas (Exhibit 64 [6]); Gene Carson, owner and operator of Maverick Feeders in Dodge City, Kansas (Exhibit 50 [7]); Paul Handke, Senior Vice President of Handke Farms, Inc. in Muscotah, Kansas (Exhibit 1 [8]); Dan Reinhart, operator of a farm and feedyard in Albion, Nebraska (Exhibit 2 [9]) .) These sellers engage in varying degrees of cash and captive transactions. The Court finds that the class proposed by the plaintiffs consists of producers who have benefitted from forward contracts and marketing agreements and producers who claim harm from captive supply. Such a class cannot be certified as it fails to satisfy the adequacy requirement. Such a class also fails to satisfy the typicality requirement of Rule 23(a).

■ The Court notes that in discussing with counsel for the plaintiffs who would constitute the members of the class, plaintiffs advised the Court that under the provisions of 7 U.S.C. § 181, *et seq.*, it was not necessary to notify the persons who actually owned the cattle that were sold to IBP but that the feedlots which accepted the cattle for feeding and then sold them on a cash basis to IBP on behalf of the owners could serve as members of the class, obviating the necessity of individually notifying the owner of each lot of cattle sold by the feedlot.

Thus, plaintiffs maintain that feedlots are proper members of the proposed plaintiff class. Feedlots typically receive payment for cattle directly from the packer. The plaintiffs explain that the Packers and Stockyards Act directs a packer to only pay the seller "or his duly authorized representative the full amount of the purchase price." 7 U.S.C. § 228(b). According to the plaintiffs, feedlots are not the "duly authorized representative," of the seller, but rather are themselves the seller. See *Plaintiffs' Reply Brief Concerning Class Certification* at 16. Plaintiffs assert that the feedlots are therefore proper plaintiffs in a class of sellers seeking redress for damages caused by IBP's allegedly unlawful use of captive-supply to depress cash market prices. The Court disagrees.

Contrary to the plaintiffs' position, the Court finds that feedlots act as the representative for the true seller, the owner of the cattle. The feedlot acts as an agent for the owner, feeding and marketing the cattle to packers. See *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 258 (5th Cir.1980). Cattle owners pay feedlots to feed, and add value to, their cattle. *Solomon Valley Feedlot, Inc. v. Butz*, 557 F.2d 717, 718 (10th Cir.1977). Title to the cattle never passes to the feedlot. In order to ensure that the owner of the cattle will pay the feedlot, the feedlot acquires a feed lien on the cattle. See *Rufenacht v. La Carte Enterprises, Inc.*, 465 F.Supp. 732, 733 (W.D.Pa. 1979). The feedlot is authorized to sell the

---

3. *Joint Appendix to Response of Defendant, IBP Inc. to Plaintiffs' Motion to Recertify Class* (Filing No. 404).

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

cattle on the owner's behalf. The feedlot accepts payment from the packer on behalf of the owner. The feedlot uses the proceeds to satisfy the feed liens and remits the rest of the money to the owner. *Id.*

Some feedlots, in addition to providing feeding and marketing services, also own cattle. Feedlots that own cattle might be proper plaintiffs if the Court were to certify a class, provided that the feedlots did not engage in any captive-supply transactions. Feedlot owners cannot, however, bring suit to recover for the injuries suffered by the owners of cattle which they fed and marketed. They may only seek redress for their own injuries. The plaintiffs have not demonstrated the feedlot owners have standing to bring claims on behalf of the cattle owners.

The owners of cattle who sold to IBP on the cash market are alleged to have received lower prices because of IBP's manipulation of the market through captive supply. Plaintiffs, however, propose to certify a plaintiff class consisting in part of feedlots that have suffered no injury. Plaintiffs have not alleged that feedlots who generate revenue by feeding cattle have been adversely impacted by IBP's captive-supply. Plaintiffs have not demonstrated feedlot revenues are tied to, or dependant upon, the prices packers pay for cattle. Feedlots are paid for feeding cattle. There is no evidence to indicate that captive supply has impacted feed prices, or reduced the demand for the services feedlots offer. Thus, such feedlots lack standing to sue IBP.

Plaintiffs' counsel acknowledged during the hearing on their amended motion to certify a class that they did not have the names of the owners of the cattle that were sold on the cash market by the feedlots. Under these circumstances, it is clear that the plaintiffs are not in a position at this time to provide notice to a class consisting of all owners of cattle who have sold on the cash market to IBP of the pending class action lawsuit.

For all of the foregoing reasons, the Court finds it would be inappropriate to certify the proposed class as defined by the plaintiffs.

## B. CREATION OF SUB–CLASSES

In their "Motion to Define and Recertify Class and Conform Class Definition with Court of Appeals Mandate," the plaintiffs could have, in the alternative, proposed the certification of multiple classes. See *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195 (5th Cir.1981). They, however, did not. The possibility of creating subclasses was first raised by the plaintiffs in their reply brief (Filing No. 414). The plaintiffs also discussed the possibility of subclassification at the September 15, 2000, hearing. Plaintiffs argue that dividing the class into two subclasses, rather than denying their motion to certify, is the appropriate course to take if their proposed class is not certified.

The Court, under Rule 23, can certify subclasses rather than deny a request for class certification. Rule 23(c)(4)(B) of the Federal Rules of Civil Procedure provides:

> [w]hen appropriate a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4)(B). The plaintiffs, in their reply brief, asked the Court to certify a class consisting of "fed cattle suppliers for cash who did not engage in any captive supply transactions during the class period." (Filing No. 414). Plaintiffs refer to this as the "main class." (Filing No. 414). Plaintiffs also requested that the Court certify a second class, or "subclass," consisting of "suppliers who engaged in both cash and captive transactions." (Filing No. 414).

When a court discerns a conflict between class members, it is appropriate to create subclasses comprised of individuals with common interests. *Boucher v. Syracuse University,* 164 F.3d 113, 118–19 (2nd Cir. 1999). Even if subclassification is appropriate, the subclasses can not be certified unless the party seeking certification can demonstrate that the requirements of Rule 23 are established. See *Buford v. H & R Block Inc.,* 168 F.R.D. 340 (S.D.Ga.1996); *Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1349 (9th Cir.1980) ("Subclasses must meet the same requirements as a class."), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336; *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas,* 511 F.2d

1073, 1077 (10th Cir.1975) ("Each subclass must meet the prerequisites established by the rule"). For the Court to certify the proposed subclasses the plaintiffs must "meet the numerosity, commonality, typicality, and representation requirements established by Rule 23(a)" for *each class separately* (emphasis added). *Woodward v. Nor–Am Chemical Company*, 1996 WL 1094746 at *3 (S.D.Ala.1996).

### 1. Main Class

 Plaintiffs ask the Court to certify a main class consisting of "fed cattle suppliers for cash who did not engage in any captive supply transactions during the class period." (Filing No. 414). The Court is not certain whether the proposed class excludes producers who have engaged in captive-supply transactions with *any packer*, or only those producers who have entered into captive-supply transactions with *IBP*. The distinction is immaterial for purposes of class certification as the plaintiffs have not established that the requirements of Rule 23 have been satisfied under either construction. While the numerosity requirement of Rule 23 is probably satisfied, plaintiffs have not addressed how they would identify the members of this class.[10]

### 2. Subclass

 In addition to the main class, plaintiffs asked the Court to certify a subclass consisting of "suppliers who engaged in both cash and captive transactions." (Filing No. 414). The plaintiffs admit that the proposed subclass lacks both a representative and legal counsel. (*Transcript, September 15, 2000*, at 18). The plaintiffs have not demonstrated they can adequately represent the interests of a mixed class. There would be a conflict between the class members, as producers in this class engage in varying degrees of captive and cash transactions. Members of the class have been either advantaged or disadvantaged by IBP's conduct in varying degrees. The Circuit Court made it clear that a class could not consist of individuals who claim harm from "the very same acts which other members of the class

have benefitted." *Pickett*, 209 F.3d at 1280. The Court therefore should not certify a subclass consisting of "suppliers who engaged in both cash and captive transactions."

### IV. Summary

In summary, the Court finds that the plaintiffs have not satisfied the Rule 23(a)(4) typicality or adequacy requirement necessary for class certification or for subclass certification. A separate order will be entered in accordance with this memorandum opinion.

---

**10.** See discussion at p. 12, *supra*.