**PHILLIPS PETROLEUM COMPANY, GPM Gas Corporation, Phillips Gas Marketing Company, Phillips Gas Company, and GPM Gas Trading Company, Appellants,**

v.

**Kathryn Aylor BOWDEN, Beulah Poorman Vick, Omer F. Poorman, Monte Cluck, Royce Yarbrough, and Benny Ted Powell, Appellees.**

No. 14–02–00634–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 1, 2003.

Rehearing Overruled July 10, 2003.

---

Michael V. Powell, Jerry K. Clements, Dallas, Richard L. Tate, Richmond, Timothy Ray Brown, Houston, for appellants.

Robert R. Herring, Anita F. Kawaja, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

In this interlocutory appeal, Phillips Petroleum Company, GPM Gas Corporation, Phillips Gas Marketing Company, Phillips Gas Company, and GPM Gas Trading Company appeal the trial court's class certification order entered in favor of royalty owners Kathryn Aylor Bowden, Beulah Poorman Vick, Omer F. Poorman, Monte Cluck, Royce Yarbrough, and Benny Ted Powell, individually, and on behalf of themselves and all others similarly situated. The trial court certified three separate subclasses of royalty owners generally alleging that Phillips has engaged in various inter-affiliate transactions resulting in its underpaying royalties to the royalty owners. Because the trial court abused its discretion in certifying each of the three subclasses, we reverse the certification order and remand the case to the trial court.

## I. BACKGROUND

### A. *Bowden I*

This is the second time this case has been presented to this court on appeal. Phillips Petroleum Company, GPM Gas Corporation, Phillips Gas Marketing Company, Phillips Gas Company, and GPM Gas Trading Company appealed a previous class certification order. *See Phillips Petroleum Company v. Bowden,* No. 14–00–01184–CV (Tex.App.-Houston [14th Dist.] Oct. 18, 2001, no pet.) (not designated for publication), 2001 WL 1249995 (*"Bowden I "*). In *Bowden I,* this court held the trial court abused its discretion in finding the class representatives satisfied all the procedural prerequisites for class certification and, accordingly, reversed the class certification order and remanded the case for further proceedings without prejudice to further consideration of class certification. *Id.* at *1.

In the first certification order, Subclass 1 included royalty owners whose royalties are to be paid on either an amount realized/proceeds or market value basis. Sub-

class 1 royalty owners alleged that Phillips Petroleum Company ("Phillips") breached an implied covenant to market. Subclass 2 included royalty owners whose royalties are to be paid in accordance with a Gas Royalty Agreement ("GRA"). Subclass 2 royalty owners alleged that Phillips erroneously failed to pay royalties on natural gas liquids ("NGLs"), and instead payed royalties only on the dry residue gas. Subclass 3 included royalty owners whose royalties are based on a percentage of the proceeds and are to be calculated on either an amount realized/proceeds or market value basis. Subclass 3 royalty owners alleged that Phillips breached the implied to covenant to market by entering into percentage of proceeds contracts ("POP" contracts) with its affiliate GPM that provided an unreasonably high fee to GPM for processing the gas.

Subclasses 1 and 3 royalty owners' claims were based on Phillips' alleged breach of the implied covenant to market. While *Bowden I* was pending in this court, the Texas Supreme Court held there is no implied covenant regarding the amount of royalty paid as to royalty owners who are paid under market value royalty provisions. *Yzaguirre v. KCS Resources, Inc.,* 53 S.W.3d 368, 373 (Tex.2001). Therefore, if Phillips acted in bad faith and sold gas at a rate substantially below market value, it may be liable to royalty owners whose royalties are paid on the amount realized/proceeds basis, but not to royalty owners whose royalties are paid on a market value basis, for breach of the implied covenant to market. *Bowden I,* 2001 WL 1249995, at *4. Phillips' compelling and distinct defense against the royalty owners whose royalties are based on market value in Subclasses 1 and 3 destroyed the typicality among the members of Subclasses 1 and 3. *Id.* at *5.

With respect to Subclass 2, *Bowden I* held the trial court abused its discretion in finding that class representative Monte Cluck satisfied the typicality and adequacy-of-representation requirements for class certification. *Id.* at *6. In the absence of the nature of Cluck's interests and any GRA that might govern those interests, Cluck did not sustain his burden to prove that he is a member of Subclass 2 or that he possesses the same interest and has suffered the same injury as the members of that subclass. *Id.* In *Bowden I,* this court further observed the certification order included all royalty owners who had been paid under a GRA without specifying the form of the GRA. *Id.*

## B. Second Class Certification Order

On remand, the trial court held a second class certification hearing and certified the following three subclasses:

Subclass 1—Royalty owners who own or owned royalty interests under leases located in the state of Texas; where Phillips Petroleum Company is the lessee; under the terms of the lease, the payment of royalty of natural gas production is based on proceeds or amount realized; from which Phillips Petroleum produced natural gas (including natural gas liquids) that was directly or indirectly sold or transferred to Phillips Gas Marketing for marketing or resale; and during the period February 1995 through the present.

Subclass 2—Royalty owners who own or owned royalty interests under leases located in the state of Texas; where Phillips Petroleum Company is the lessee; the royalty is paid pursuant to a Gas Royalty Agreement containing language substantially identical to the language bracketed in the Gas Royalty Agreement attached as Exhibit 1

and incorporated herein by reference; the Gas Royalty Agreement has no additional language relating to processing gas or the payment of royalty on natural gas liquids; and during the period February 1995 through the present.

Subclass 3—Royalty owners who own or owned royalty interests under leases located in the Panhandle of the state of Texas; where Phillips Petroleum Company is the lessee; the leases provide for payment of royalties on natural gas production on an amount realized/proceeds basis or market value/market price basis; from which Phillips Petroleum produced natural gas (including natural gas liquids) that was directly or indirectly sold or transferred to GPM (or any successor entity) for marketing or resale; Phillips Petroleum Company was paid on the basis of a gas purchase contract between Phillips and GPM (or any successor entity); and during the period February 1995 through the present.

The new Subclass 1 differs from the old one in that it includes royalty owners whose royalties are paid on only the amount realized or proceeds basis and who are asserting claims for breach of both the implied covenant to market and an express covenant to market. The only change to Subclass 2 is the addition of Royce Yarbrough and Ted Powell as class representatives. Subclass 3 royalty owners, who include both those paid on an amount proceeds and market value basis, now claim Phillips breached the implied covenant to manage and administer the lease by entering into POP contracts with GPM that pay GPM an unreasonably high fee to process the gas.

With respect to Subclass 1, the trial court defined the common issues as:

Has Phillip Petroleum failed to reasonably market the plaintiffs' gas? Stated another way, has Phillips Petroleum failed to act as a reasonably prudent operator when it entered into a gas purchase agreement with its wholly-owned affiliate, Phillips Gas Marketing, for prices less than could be achieved through diligent marketing?

How much more, on a per unit basis, could Phillips Petroleum have obtained for its gas if it had diligently marketed the gas instead of simply selling it to Phillips Gas Marketing?

With respect to Subclass 2, the trial court defined the common issues as:

Has Phillips Petroleum's uniform practice of using only residue gas prices when computing and paying royalties, and ignoring the values for natural gas components, constituted a breach of the Gas Royalty Agreements?

What values for natural gas components should Phillips Petroleum have used each month when computing and paying royalties under the Gas Royalty Agreements?

With respect to Subclass 3, the trial court defined the common issues as:

In entering into POP contracts with its wholly-owned subsidiary GPM, has Phillips Petroleum breached its covenant to manage and administer the lease by allowing excessive processing charges to be deducted from royalty payments?

By entering into POP contracts, how much greater were the processing costs charged plaintiffs and class members than should have been charged as reasonable costs?

## II. STANDARD OF REVIEW

The trial court's ruling on class certification is reviewed for abuse of discretion. *Texas Dep't of Transp. v. Barri-*

*er,* 40 S.W.3d 153, 156 (Tex.App.-Houston [14th Dist.] 2001, no pet.). The trial court abuses its discretion when it (1) does not properly apply the law to the undisputed facts; (2) acts arbitrarily or unreasonably; or (3) rules on factual assertions not supported by the record. *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no pet.). While we must give deference to the trial court's assessment of the credibility of witnesses, the trial court's exercise of discretion cannot be supported by every presumption that can be made in its favor. *Schein v. Stromboe,* 46 Tex. Sup.Ct. J. 103, 102 S.W.3d 675, 691 (Tex. 2002). In other words, the named plaintiffs must demonstrate actual compliance with the requirements of Rule 42; such compliance will not be presumed. *Id.* Thus, while the trial court's ruling on class certification is subject to abuse of discretion, there is no right to proceed as a class action. *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000). Instead, the plaintiff must satisfy all requirements for certification of the class as set forth in Rule 42 of the Texas Rules of Civil Procedure. TEX.R. CIV. P. 42; *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 453 (Tex.2000).

The class action must first meet the four threshold requirements set forth in Rule 42(a): (1) numerosity (the class is so numerous that joinder is impracticable); (2) commonality (there are common questions of fact and law); (3) typicality (the representative's claims are typical of the class); and (4) adequacy of representation (the representative parties will protect the interests of the class). TEX.R. CIV. P. 42(a). Additionally, the class action must satisfy at least one of the four categories found in Rule 42(b). TEX.R. CIV. P. 42(b). With respect to the Rule 42(b) requirement, appellees proceeded under 42(b)(4), which provides "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(b)(4).

## III. SUBCLASS 1

Phillips produces natural gas from wells in Fort Bend and Brazoria Counties in which members of Subclass 1 own interests and sells that gas to Phillips Gas Marketing Company ("PGMC"), a Phillips subsidiary. After gathering, treating, and processing, PGMC sells the gas to third parties. Subclass 1 royalty owners claim Phillips breached both (1) express lease provisions addressing Phillips' duty to market the gas and (2) the implied duty to diligently market the gas. Subclass 1 royalty owners complain their royalties are based on the price at which Phillips sells the gas to PGMC, which is based on "two arbitrarily selected index prices," less 10 cents, rather than on the higher price at which PGMC sells the gas to third parties. Phillips, on the other hand, contends the gas royalty clauses in the Bowden[1] oil and gas leases require that royalties be based on the amounts Phillips realizes from sales of the gas "computed at the mouth of the well," or on the market value of gas "at the mouth of the well," not on prices for downstream sales to third parties after substantial value has been added by gathering, treating, storing, and transporting the gas. There are at least 2,330 oil and gas leases granted or assigned to Phillips in Fort Bend County and 538 leases granted or assigned to Phillips in Brazoria County.

### A. Predominance

■ Phillips claims individual questions will overwhelm any common issues in

---

1. Bowden, Vick, and Poorman represent Subclass 1.

Subclass 1. Questions common to the class are those questions which, when answered as to one class member, are answered as to all class members. *Spera,* 4 S.W.3d at 810. The threshold for commonality is not high. *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 33 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Commonality does not require that all questions of law and fact must be identical, but only that an issue of law or fact exists that inheres in the complaints of all class members. *Id.; Spera,* 4 S.W.3d at 811.

■ As noted above, appellees proceeded under Rule 42(b)(4), which requires common questions of law or fact of the class that predominate over any questions affecting only individual members. Tex.R. Civ. P. 42(b)(4). Because the predominance requirement is far more demanding than the commonality requirement, it acts as a check on the more flexible commonality test. *Bernal,* 22 S.W.3d at 435 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Therefore, because the predominance requirement is so stringent, we consider it first. *Id.* at 433; *see also West Teleservices, Inc. v. Carney,* 75 S.W.3d 455, 459 n. 6 (Tex.App.-San Antonio 2001, no pet.) (stating predominance and commonality inquiries are subsumed into one).

■ Predominance is determined by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are common to the class. *Bernal,* 22 S.W.3d at 434. The test for predominance is not whether common issues outnumber individual issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Id.* (quoting *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, writ dism'd w.o.j.)). "If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate." *Id.* Thus, a judgment in favor of the class should settle the entire controversy and all that should remain is for the other class members to file their proofs of claim. *Id.* (quoting *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.-Fort Worth 1986, no writ)).

Rule 42(b)(4) sets forth a non-exhaustive list of factors for guiding the court in determining the predominance requirement: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Tex.R. Civ. P. 42(b)(4)(A)—(D).

■ The royalty owners maintain these issues will be resolved by submitting a single liability question asking whether Phillips failed to market the gas with reasonable diligence. They allege Phillips engaged in a common course of conduct constituting a common issue, *i.e.,* Subclass 1 royalty owners are paid royalties based on the amount realized from the sale of gas to Phillips' affiliate, PGMC. Therefore, according to the royalty owners, if a jury determines this common course of conduct constitutes a breach of Phillips' duty as to one royalty owner, it answers the question as to all royalty owners.

As a threshold matter, however, the jury will have to determine which royalty owners are included in Subclass 1, which is limited to those whose royalties are paid on an amount realized/proceeds, not market value, basis. John Hafner, a landman, was asked by the royalty owners to review Fort Bend and Brazoria Counties records with regard to leases in Phillips' name. Two of Hafner's employees looked at the 2,330 leases in Fort Bend County and the 538 leases in Brazoria County. Hafner found there were differences among the royalty clauses in those leases. For example, Hafner found a number of leases that contained "two-pronged" royalty clauses. Under a two-pronged clause, royalty is based on "proceeds" when the gas is sold at the wells, but when the gas is sold or used off the lease, royalty is based on "market value at the well." Hafner testified that to determine which prong applies, one must determine where the particular gas covered by the lease is sold or used, which necessarily requires a well-by-well inquiry.

 Even after determining which royalty owners are members of Subclass 1, before a jury can determine whether Phillips breached its duty to market the gas diligently, it must first determine what duty Phillips owed to each royalty owner with respect to its duty to market the gas. Subclass 1 royalty owners allege that Phillips breached both an implied covenant and an express covenant to market the gas diligently. The jury will have to determine which leases contain an express covenant covering Phillips' duty to market the gas. There is no implied covenant when the oil and gas lease expressly covers the subject matter of the implied covenant. *Yzaguirre*, 53 S.W.3d at 373. A covenant cannot be implied into an oil and gas lease without first examining the express terms of the lease. *Union Pac. Res. Group, Inc.*

*v. Neinast*, 67 S.W.3d 275, 284 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (citing *Gulf Prod. Co. v. Kishi*, 129 Tex. 487, 103 S.W.2d 965, 969 (1937)).

Hafner testified that at least 89 percent of the Phillips leases in Fort Bend County contain an express clause concerning the lessee's duty to market. Hafner further testified some Phillips leases in Brazoria County also contain express clauses dealing with the lessee's duty to market. The task of determinating which leases contain provisions expressly addressing Phillips' duty to market the gas cannot be accomplished without an individual examination of each lease.

Moreover, a review of the record reflects that even among leases containing an express covenant with respect to Phillips' duty to market the gas, there are differences among those express clauses. Therefore, each lease containing an express covenant may impose duties on Phillips that differ from those in other leases, and Phillips' duties with respect to each royalty owner can only be ascertained after reviewing each individual lease.

Finally, a number of leases do not contain an express clause setting forth Phillips' duty to market the gas. With respect to those leases, the royalty owners claim Phillips breached the implied covenant to market the gas diligently. The jury will have to ascertain Phillips' duty with respect to marketing the gas under the implied covenant to market the gas before it can make any determination as to whether Phillips breached the implied covenant.

 Even assuming the jury is able to determine Phillips' duty to market gas relative to each royalty owner, whether based on an express or implied covenant, the jury will have to decide whether Phillips breached the express or implied covenant based on whether Phillips acted as would a reasonably prudent operator un-

der the same or similar circumstances. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567–68 (Tex.1981) ("The standard of care in testing the performance of implied covenants by lessees is that of a reasonably prudent operator under the same or similar facts and circumstances."). Additionally, the implied covenant to market the gas includes a duty to obtain the best price reasonably possible for the marketed production. *Hutchings v. Chevron U.S.A., Inc.*, 862 S.W.2d 752, 760 (Tex. App.-El Paso 1993, writ denied); R. Hemingway, LAW OF OIL AND GAS at 483 (West 3d ed.1991). Therefore, "[d]etermining the best reasonably attainable price under same or similar circumstances necessarily contemplates a fact specific, location-by-location inquiry for each lease." *Neinast*, 67 S.W.3d at 284.

The royalty owners contend this case is manageable based on the fact that Phillips has administered royalty owners' interests for many years, tracking their lease history, lease terms, volumetric history, and all other information it deems necessary in order to calculate royalty payments on its computer system. The royalty owners assert Phillips maintains all relevant information on its computer system.

The royalty owners' argument, however, ignores the fact that the jury must first determine what Phillips' duties were with regard to each lease and then whether Phillips breached its duties. The royalty owners have not shown that Phillips' computer system contains such information. The only way to ascertain the scope of Phillips' duties owed to each royalty owner under each lease is by examining each lease.

The royalty owners further attempt to justify class certification in this case by arguing that "[b]ecause this case affords extraordinary economies to all parties and the judiciary at large, and a class certifica-tion is the only way that a vast majority of the royalty owners will ever receive any justice, class treatment is unquestionably superior to any alternatives." According to the royalty owners, "[t]he potential recovery for each of the royalty owners does not represent a significant enough interest such that an individual action is more desirable.... Indeed, their recovery would be small in comparison to the costs of prosecuting their individual claims." Although recognizing it may not be economically feasible to pursue some claims outside a class action, *Bernal* stressed there is no right to litigate a claim as a class action; rather, the trial court may certify a class action only if the plaintiffs satisfy all requirements of Rule 42. *Bernal*, 22 S.W.3d at 439.

Thus, a common liability question cannot determine Phillips's duty as to each lease. Because individual issues regarding duty and breach will predominate over common issues, the trial court abused its discretion in certifying Subclass 1.

## IV. SUBCLASS 2

The crux of the dispute underlying Subclass 2 royalty owners' claims against Phillips is the interpretation of the GRA's between Phillips and the royalty owners as to how royalties are to be calculated under the GRA's. GRA's provide a different basis for measuring royalties on natural gas from the measures set forth in the oil and gas leases. Phillips sells the gas at or near the wellhead to its wholly-owned subsidiary GPM, which, in turn, gathers and transports the gas to a processing plant to remove the natural gas liquids ("NGL's"). GPM sells the dry residue gas to third parties while selling most of the NGL's to Phillips. Subclass 2 royalty owners complain that GPM calculates royalty based on the weighted average sales price received for the dry residue gas, without consider-

ing the proceeds it receives from the sale of NGL's in breach of the GRA's. Phillips, on the other hand, argues the GRA's do not provide for royalties to be paid on the NGL's. Subclass 2 royalty owners advised the trial court there are 3,000 to 4,000 GRA's covering leases in the Texas Panhandle.

## A. Predominance

Phillips argues the trial plan demonstrates that the trial court has decided the GRA's are ambiguous. Specifically, Phillips contends that by requiring the jury to find the "formula that the defendants should have used to compute royalty payments under the GRA's," the trial court has determined the GRA's to be ambiguous. That is, if the trial court had not determined the GRA's are ambiguous, the jury would not need to find a "formula" that is already set forth within the four corners of each GRA. *See Exxon Corp. v. West Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex.1993) (stating trial court's determination as to ambiguity is implicit in its decision to submit extent of defendants' liability to jury which required jury to determine on basis of extrinsic evidence which interpretation parties intended). We agree.[2]

The royalty owners contend the fact the trial court plans to submit a jury question on whether the GRA's were breached does not warrant an implied finding of ambiguity. They assert the trial court, instead, intends only to ask the jury whether Phillips breached the GRA's, but does not intend to ask the jury to interpret the terms of the GRA's and would instruct the jury regarding Phillips' obligations under the GRA's. A review of the trial plan belies the royalty owners' assertion. With respect to Subclass 2, the trial plan provides the following:

> Subclass 2 set above will have a single liability question of whether there was a breach of contract with respect to the GRAs.

\* \* \*

> The damage question for Subclass 2's express breach of contract claim *will require the jury to state the formula that the defendants should have used to compute royalty payments under the Gas Royalty Agreements.* Once that answer is obtained, the computation of individual royalty owners' damages will again be an administrative function that can be accomplished using the historical data contained in Phillips' computer system.[3]

Whether a contract is ambiguous is a question of law for the court's determination. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). If the contract is subject to two or more reasonable interpretations, the contract is ambiguous, thereby creating a fact issue on the parties' intent. *Columbia Gas*

2. On remand after *Bowden I*, Phillips moved for partial summary judgment asking the trial court to find the GRA's unambiguous and interpret the GRA's as not requiring royalties to be calculated on the price received for NGL's when calculating the monthly "weighted average price per Mcf received by Lessee from all sales of gas." The trial court denied Phillips' motion for summary judgment without stating its reasons for the denial. Phillips argues that in denying its motion for summary judgment, the trial court found the GRA's to be ambiguous. Phillips also asserts that in response to its motion for summary judgment the royalty owners argued in the trial court that the GRA's are ambiguous. The royalty owners contend they never asserted the GRA's are ambiguous. We need not address these arguments because the trial court implicitly found the GRA's to be ambiguous as presented in the trial plan.

3. Emphasis added.

*Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). On the other hand, if the written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). The fact that the parties put forth conflicting interpretations does not create an ambiguity. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589.

■■■ By its stated intention to ask "the jury to state the formula that the defendants should have used to compute royalty payments under the [GRA's]," the trial court, at the very least, has implicitly found the GRA's are ambiguous. Phillips claims that because the trial court has determined the GRA's are ambiguous, individual questions will predominate with regard to the jury having to determine what each Subclass 2 royalty owner and Phillips intended when they entered into the GRA's. We agree. The intentions and understandings of individual royalty owners who executed GRA's probably varied from owner to owner; therefore, the determination of one GRA owner's intent will not necessarily answer the intent inquiry for any other class member. If the GRA's are ambiguous as the trial court has determined, the intent of the parties to each of the 3,000 to 4,000 GRA's will have to be tried to the jury separately. *See Wal–Mart v. Lopez,* 93 S.W.3d 548, 557 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (finding that in class action involving breach of contract claim, any determination with regard to "meeting of the minds" necessarily requires individual inquiry into what each class member and each Wal–Mart employee who allegedly made offer said and did). Such individual determinations will overwhelm the trial court and the jury. Therefore, individual issues re-

garding the GRA's will predominate over common issues.

### B. Adequacy of Representation

After *Bowden I,* Monte Cluck withdrew as representative for Subclass 2. Royce Yarbrough and Ted Powell were added as representatives for Subclass 2.

#### 1. Royce Yarbrough

■■■ Phillips contends Yarbrough cannot adequately represent Subclass 2 because of intra-class antagonism. The named representatives must fairly and adequately protect the interests of the class members. TEX.R. CIV. P. 42(a)(4). Adequacy of representation has two elements: (1) an absence of antagonism between the class representatives and the class members, and (2) an assurance the representatives will vigorously prosecute the class claims and defenses. *Graebel/Houston Movers, Inc.,* 26 S.W.3d at 32; *E & V Slack, Inc. v. Shell Oil Co.,* 969 S.W.2d 565, 568 (Tex.App.-Austin 1998, no pet.). The adequacy inquiry serves to uncover conflicts of interest between the named parties and the class they seek to represent. *Amchem Prods., Inc.,* 521 U.S. at 625, 117 S.Ct. 2231.

■■■ Adequacy of representation is a question of fact that must be determined by reference to the individual circumstances of each case. *Entex, a Div. of Noram Energy Corp. v. City of Pearland,* 990 S.W.2d 904, 915 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Factors affecting this determination include: (1) adequacy of counsel; (2) potential for conflicts of interest; (3) the personal integrity of the plaintiffs; (4) the representatives' familiarity with the litigation, and their belief in the legitimacy of the grievance; (5) whether the class is unmanageable because of geographical limitations; and (6) whether the plaintiffs can afford to finance the class

action. *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 (Tex.App.-Austin 1995, writ dism'd w.o.j.) (op. on reh'g).

■ The primary consideration in whether the representative parties will fairly and adequately protect the interests of the class is a determination of whether any antagonism exists between the interests of the plaintiffs and those of the remainder of the class. *Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex.App.-Fort Worth 1990, no writ). Speculative claims of class conflict are not sufficient to establish that the trial court abused its discretion in finding adequate representation. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self–Ins. Fund*, 886 S.W.2d 470, 476 (Tex.App.-Austin 1994, writ dism'd w.o.j.). Only a conflict that goes to the very heart of the litigation will defeat a party's claim of representative status. *Forsyth*, 903 S.W.2d at 151; *Adams*, 791 S.W.2d at 291.

There are two methods for measuring natural gas. The first is to measure the volume of space the gas occupies at a specified pressure and temperature; that volumetric unit of measure is 1,000 cubic feet or "Mcf." The second method is by the heating content of the gas, which varies depending on the mix of hydrocarbon and inert, non-hydrocarbon molecules that exists within gas streams. The measure of heating content is a British thermal unit, or "Btu."

■ Under the current system, Phillips pays royalties on the total volume of gas produced in Mcfs, regardless of the heating quality or Btu content of any particular stream of gas. Phillips argues the GRA's require royalties to be paid based on the volume of natural gas produced from the wells. Subclass 2 royalty owners seek a higher royalty payment for royalty owners whose property produces gas having a high Btu content. Phillips argues

that while royalty owners whose leases produce high Btu content gas will receive a greater royalty than they currently receive under their proposed interpretation of the GRA's, royalty owners whose leases produce low Btu content gas will receive less royalty than they now receive.

Phillips contends that Subclass 2 representative Yarbrough is currently paid for the full volume of gas coming from a certain well despite its high nitrogen and low Btu content, as if the entire volume were pipeline quality residue gas. If the GRA price must be adjusted for the Btu content of particular gas streams, the adjustment for Yarbrough's low Btu content would be downward; therefore, Yarbrough likely will receive less royalty for this gas than she currently receives. In her testimony at the second certification hearing, Yarbrough acknowledged that if this suit is successful, she may receive less royalty.

Kris Terry, Phillips's expert witness, analyzed one of Yarbrough's wells, the "Virgil well," and concluded that well would generate less royalty under the royalty owners' interpretation of the GRA's. Terry testified that one of Yarbrough's wells produces gas of which 17 percent is an inert, non-hydrocarbon substance (nitrogen) and, therefore, has a low heating value or low Btu content. Because Yarbrough is being paid for the full volume of gas coming from that well as though the entire volume were pipeline quality gas, if the GRA price must be adjusted for the Btu content of the gas streams produced from Yarbrough's well, the adjustment for the low Btu content would lower Yarbrough's current royalty payment on that well.

■ "'It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.'" *Pickett v.*

*Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1768 at 326 (2d ed.1986)). Furthermore, a class action cannot be maintained when the class members have opposing interests or when it includes members who benefit from the same acts alleged to be harmful to other class members. *See, e.g., Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir.2002) (finding class representative inadequate when she had already agreed to abide by Texas statute of limitations even though this might cause other class members who might live in other jurisdictions with longer statutes of limitations to lose some of their claims); *Pickett,* 209 F.3d at 1280–81 (finding named plaintiffs could not provide adequate representation to class that included those who claim harm from the same acts from which other members have benefitted); *Bieneman v. City of Chicago,* 864 F.2d 463, 465 (7th Cir.1988) (finding no abuse of discretion in trial court's refusal to certify class action for airport noise case on basis that some class members will benefit from increased operations at airport); *Bolin Farms v. American Cotton Shippers Ass'n,* 370 F.Supp. 1353, 1357 (W.D.La.1974) (finding named plaintiffs' interests antagonistic to other class members who have benefitted from contract being challenged); *E & V. Slack, Inc.,* 969 S.W.2d at 568 (finding named representatives could not adequately represent class in light of existence of conflict of interest between named representatives and other class members).

Many of the members of Subclass 2 benefit from the very method of calculating royalties that is being challenged. Therefore, this conflict between royalty owners with low Btu content and those with high Btu content goes to the very subject matter of Subclass 2's claims and is not speculative. Given this conflict, Yar-brough cannot provide adequate representation to a class that includes both members that will benefit and members who will be harmed by the royalty owners' proposed interpretation of the GRA's.

### 2. Ted Powell

■ Phillips also contends Ted Powell did not sustain his burden to establish his adequacy as a class representative because the trial court did not have his deposition at the time it signed the class certification order. The royalty owners did not propose Powell as a representative for Subclass 2 until they filed their Seventh Amended Petition—after the second certification hearing. In a letter dated April 17, 2002, the royalty owners informed the trial court that they were adding Powell as a Subclass 2 representative:

> [S]ince the second hearing, plaintiffs have amended their petition to make the following changes:
>
> A new class representative has been added, Ted Powell, for the GRA class, subclass number 2. Mr. Powell's gas has a high Btu content and thus there is no question but that he would benefit from a payment method as called for in the GRAs in which he received payment for his liquids. Mr. Powell's deposition is being scheduled. That transcript will be filed with this Court so that Your Honor can be satisfied that Mr. Powell is an adequate class representative.

The royalty owners maintain the trial court received a copy of Powell's deposition before it signed the certification order on June 14, 2002, and therefore had sufficient evidence to support its findings. By letter dated June 14, 2002, which indicates a copy of Powell's deposition was enclosed, the royalty owners advised the trial court of Powell's qualifications to serve as a Subclass 2 representative. Although the June

14, 2002 letter is included in the clerk's record, there is nothing to show that Powell's deposition was attached to the letter. The copy of Powell's deposition included in the clerk's record is file stamped "June 28, 2002;" the index to the supplemental clerk's record on appeal indicates Powell's deposition was filed on June 23, 2002.

 In reviewing the trial court's class certification order, an appellate court may not consider material that was not before the court at time the trial court made its ruling. *State Indus., Inc. v. Fain,* 38 S.W.3d 167, 169 (Tex.App.-Waco 2000, pet. denied); *Monsanto Co. v. Davis,* 25 S.W.3d 773, 781 (Tex.App.-Waco 2000, pet. dism'd w.o.j.); *Methodist Hosps. of Dallas v. Tall,* 972 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1998, no pet.). There is nothing in the record to establish that Powell's deposition was before the trial court at the time it signed the class certification order. In the absence of Powell's deposition, there is no evidence of Powell's adequacy as a representative of Subclass 2.

Because the trial court has determined the GRA's are ambiguous, individual issues regarding the intent of each party entering into a GRA will have to be determined, and thus predominate over common issues. Furthermore, because of intra-class antagonism, Yarbrough cannot adequately represent Subclass 2. Finally, because there was no evidence before the trial court regarding Powell's qualifications to serve as Subclass 2 representative at the time it signed the class certification order, Powell has not shown that he can adequately represent Subclass 2. Therefore, the trial court abused its discretion in certifying Subclass 2.

## V. SUBCLASS 3

Phillips sells gas to its wholly owned subsidiary GPM under gas purchase contracts known as percentage of proceeds contracts ("POP contracts"). Under the POP contracts, the transfer price from GPM to Phillips is calculated as a certain percentage of the weighted average sales price received by GPM from third parties. Subclass 3 royalty owners claim GPM retains a certain amount of the value of the residue gas and the NGL's as a "fee" for marketing and processing the gas. According to the royalty owners, the percentage of proceeds that GPM paid to Phillips is typically between 78% and 82%; therefore, the fee retained by GPM was between 22% and 18%. Because Subclass 3 royalty owners are paid royalties based on the net percentage of proceeds that Phillips receives, the higher the fee retained by GPM, the less royalties received by the royalty owners. Subclass 3 royalty owners, both proceeds and market value owners, claim Phillips has breached the implied covenant to manage and administer their leases as a reasonably prudent operator by charging excessive post-production processing fees based on a percentage of proceeds.

Phillips contends the percentage split is nothing more than part of the formula utilized for calculating the price GPM is obligated to pay Phillips for gas delivered at the wellhead. Phillips states it does not charge or deduct any amount from the price Phillips receives from GPM for gas delivered at the wellhead before paying royalties; instead, royalty owners receive their fractional share of exactly the same price Phillips receives for its sales of gas at the wells.

### A. Class Members

 Although the trial court's certification order includes royalty owners whose royalties are paid on both amount realized/proceeds and market value bases, the royalty owners requested in their Seventh Amended Petition, which was filed after the second certification hearing, that Subclass 3 be certified for only "proceeds or

amount realized" leases, not market value leases. The royalty owners state they informed the trial court by letter dated April 17, 2002, that they intended to include market value leases. However, the April 17, 2002 letter does not support this assertion. The letter states with regard to Subclass 3:

> Additionally, since the second hearing, plaintiffs have amended their petition to make the following changes:
>
> * * *
>
> • We have limited subclass number 3, the POP subclass, to the Panhandle. Since Mr. Cluck, the POP class representative, is located in the Panhandle, we have limited that class to that area.
> • An express contract claim for leases that have an express obligation to market the gas has been added to subclasses 1 (Fort Bend and Brazoria) and 3(POP).

The royalty owners' petition does not support a claim for breach of the implied covenant to manage and administer leases that base royalties on market value.

## B. Predominance

■■■ Phillips contends individual issues with regard to Subclass 3 royalty owners' claims under the POP contracts will predominate over any common issues. We agree. There are hundreds of POP contracts with different percentages between Phillips and GPM at issue. The percentage under each POP contract was negotiated based on the particular circumstances of the gas being sold. To determine if

Phillips breached its duty to manage and administer Subclass 3 royalty owners' leases,[4] the jury will have to conduct an intensive factual inquiry into the circumstances surrounding each POP contract. Factors to consider include well distance from GPM's gathering system, availability of gas for sale by Phillips, and Phillips' alternatives for selling gas other than to GPM. Inquiry into these factors requires individualized proof, which undoubtedly will overwhelm the trial court and the jury. Thus, individual issues will predominate over common issues.

The trial court abused its discretion in certifying Subclass 3 by including market value leases when there is no support for such claims in the royalty owners' pleadings. Moreover, individual issues will predominate over common issues.

## VI. RES JUDICATA

■■■ Phillips also asserts the trial court abused its discretion in certifying each of the three subclasses because res judicata will bar other breach of contract claims not asserted in this action. Res judicata, or claims preclusion, precludes the relitigation of claims that have been finally adjudicated, as well as related matters that should have been litigated in the prior suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). Texas follows the transactional approach. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992). Under that approach, a subsequent suit is barred if it arises out of the same subject matter of the prior suit and which through diligence could have been litigated in the prior suit. *Id.* The elements of res judicata

---

**4.** Phillips argues there is no recognized general "implied covenant to manage and administer the lease properly." Instead, it is a description of "miscellaneous" implied covenants found in a treatise, which include the specific implied covenants to produce and market, to operate with reasonable care, to

use successful modern methods of production and development, and to seek favorable administrative action. R. Hemingway, LAW OF OIL AND GAS at 542, 574 (West 3d ed.1991). However, given our disposition of Subclass 3, we need not address this argument.

are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

The trial court's certification order specifically excludes claims not included in the order. The royalty owners argue class members whose claims are not actually litigated are not barred by res judicata. In other words, under the royalty owners' argument, if Phillips were to win a take-nothing judgment against the class, individual royalty owners would still be allowed to pursue claims for the under payment of royalties based on legal theories not asserted in this action.

▆▆▆▆▆ Rule 42(d) provides that *"[w]hen appropriate (1) an action may be brought or maintained as a class action with respect to particular issues, ..."* TEX.R. CIV. P. 42(d) (emphasis added). Phillips contends the certification order impermissibly splits the class members' causes of action for breach of the leases. We agree with Phillips' contention. All claims arising from a legal relationship such as a lease or a contract will arise from the same subject matter and will be subject to res judicata. *Musgrave v.*

*Owen*, 67 S.W.3d 513, 520 (Tex.App.-Texarkana 2002, no pet.). Here, the royalty owners have narrowly crafted their claims for breach of implied and express covenants in an attempt to satisfy all the requirements of Rule 42. The result of such crafting is that other potential breach of contract claims will be precluded by res judicata.[5]

While two other Texas courts of appeals have addressed the preclusive effect of res judicata on claims not asserted in a class, the Texas Supreme Court has yet to consider it. *See Compaq Computer Corp. v. LaPray*, 79 S.W.3d 779, 793 (Tex.App.-Beaumont 2002, pet. filed) (stating that in class action, splitting claims may be appropriate; fact that defendants engaged in course of activity giving rise to myriad claims, only some of which are suitable for class treatment, does not mean certification is inappropriate); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 610–611 (Tex. App.-Texarkana 1995, writ dism'd) (rejecting argument that by tailoring class to exclude parties claiming consequential damages, trial court risks subjecting claims for those damages to res judicata).[6] Under well-established principles of Texas law, the royalty owners must bring all claims relating to the breach of the lease agreements in the same action or they will be subject to res judicata's preclusive effect. *See Musgrave*, 67 S.W.3d at 520.

---

**5.** *See, e.g., Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 606–07 (S.D.N.Y.1982) (finding question of adequacy of representation exists when class representatives are willing to assert on behalf of class only claims arising from breach of warranty; such tailoring of claims to improve possibility of demonstrating commonality presents putative class members with significant risks of later being informed they had impermissibly split a single cause of action); *City of San Jose v. Superior Court of Santa Clara County*, 12 Cal.3d 447, 464–65, 525 P.2d 701, 712–13, 115 Cal.Rptr. 797, 808–09 (1974) (finding inadequate representation because by seeking damages for diminution in market value, plaintiffs would

be waiving, on behalf of class members, any possible recovery of substantial damages).

**6.** The court in *Microsoft* relied on *Marshall v. Kirkland*, 602 F.2d 1282, 1298 (8th Cir.1979). In *Marshall*, the court held individual class members' discrimination claims were not barred by res judicata after the trial court's adverse ruling on class discrimination claims. *Id.; see also Cooper v. Federal Reserve Bank*, 467 U.S. 867, 880, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (holding judgment against class in discrimination action did not bar subsequent individual claims for discrimination).

Although a class action may be maintained with respect to particular issues "when appropriate," Rule 42 is not meant to be an exception to res judicata. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 405 (Tex.2000). We conclude the trial court's class certification order impermissibly splits claims for breach of the lease agreements. Moreover, given the willingness of the class representatives to abandon claims for the sake of achieving commonality, we conclude they cannot adequately represent the three subclasses and the trial court abused its discretion in certifying the class action.

## VII. CONCLUSION

We hold the trial court abused its discretion in granting class certification as to each of the three subclasses. We reverse the trial court's class certification order and remand the case for further proceedings consistent with this opinion.