# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00322-CV

**HFE Development Corporation, Don F. Holley, and Barbara Holley, Appellants**

**v.**

**Barbara Wilbourne and Dave Wilbourne, Appellees**

**FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
NO. 12,228, HONORABLE GUILFORD L. JONES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Barbara and David Wilbourne ("the Wilbournes") sued HFE Development Corporation ("HFE"), Don F. Holley, and Barbara Holley (collectively, "appellants") for, among other claims, breach of contract and common-law fraud. The district court rendered judgment on a jury verdict and awarded damages against appellants. On appeal, appellants present five issues for our review. By their first two issues, they contend that the district court committed reversible jury-charge error by: (1) submitting a jury question that improperly contained questions of law, and (2) failing to submit appellants' proposed jury question on a quantum meruit cause of action. In their third issue, appellants argue that there is legally insufficient evidence to support the jury's finding that Barbara Holley committed fraud. Fourth, they assert that this Court should reform the district

court's judgment because the award of appellate attorney's fees to the Wilbournes was not made contingent on the Wilbournes' success on appeal. Finally, appellants contend that section five of the judgment, which prohibits double recovery, limits the maximum amount of recovery to $128,518.60, plus pre- and post-judgment interest. We will modify the judgment regarding appellate attorney's fees and affirm the judgment as modified.

## BACKGROUND

In 1992, the Wilbournes purchased a piece of property on Lake Buchanan with the intention of building a bed and breakfast. In the fall of 1997, the Wilbournes hired HFE, a construction firm owned and operated by the Holleys, to build the bed and breakfast. Don Holley estimated that the construction of the bed and breakfast would cost approximately $215,000 and be completed around March 1998.

On November 3, 1997, Don Holley, on behalf of HFE, and Mrs. Wilbourne signed a cost-plus construction contract. The contract provided that "[t]he total price for the Improvements [was] net cost of all materials and labor plus an 8% profit for any/all materials and labor provided by Contractor." The contract further provided that "[p]rior to commencement of construction, Contractor [would] furnish Owner with a name and wage list (Exhibit "A") of those persons directly involved." The contract did not list a total price for the project. Attached to the construction contract was an Exhibit "A," which listed names and "hourly wages" for various workers.

HFE began construction in December 1997. Around that time, HFE created a document that memorialized the estimated $215,000 construction price. As construction progressed, Barbara Holley, as HFE's bookkeeper, prepared invoices for the Wilbournes. Mrs. Wilbourne paid

2

the invoices by check until HFE left the job in February 1999. The parties agree that construction was incomplete at that time. The Wilbournes assert that the existing construction was deficient and failed to comply with building codes, thereby violating the express terms of the contract.

The Wilbournes filed suit in February 2000, alleging several causes of action, including breach of contract and common-law fraud. During the course of the lawsuit, the Wilbournes discovered that the "hourly wages" in Exhibit "A" reflected amounts between $5.00 and $7.50 more per worker per hour than HFE had actually paid each worker per hour.[1] Because the invoices were based on inflated "hourly wages," the Wilbournes contended that HFE and the Holleys grossly overcharged them for labor. The Holleys, meanwhile, reviewed HFE's records and alleged that the Wilbournes still owed HFE money—an amount that increased from $0 to approximately $11,000 over the course of the lawsuit. HFE and the Holleys filed counterclaims alleging, among other things, that the Wilbournes did not pay HFE its fee for the final portion of work it did on the construction project. Following a jury verdict that was favorable to the Wilbournes, the district court entered judgment. In addition, the district court rendered a take-nothing judgment on appellants' counterclaims. This appeal followed.

## DISCUSSION

**Submission of Jury Questions**

By their first two issues on appeal, appellants contend that the district court committed reversible error as to the jury charge. We apply an abuse-of-discretion standard of review

---

[1] The Wilbournes' CPA and certified fraud examiner testified at trial that the average hourly overcharge was $5.33 per hour.

for alleged errors in the jury charge. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). "The trial court has wide discretion in submitting jury questions as well as instructions and definitions." *Niemeyer v. Tana Oil & Gas Co.*, 39 S.W.3d 380, 386 (Tex. App.—Austin 2001, pet. denied). A trial court does not abuse its discretion merely by deciding a matter differently than we would in a similar circumstance. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). A trial court abuses its discretion only when it acts without reference to any guiding rules or principles (i.e., arbitrarily or unreasonably). *Id.* at 241-42. Alleged error will warrant reversal only if, "when viewed in light of the totality of circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 350 (Tex. App.—Austin 2002, pet. denied); *see also* Tex. R. App. P. 44.1(a)(1).

*Questions of Law in Jury Charge*

Appellants contend that Jury Question Number One is fatally defective because it improperly submitted questions of law to the jury. The question asked the following: "Did HFE fail to comply with the Contract by overcharging Plaintiffs for the labor and/or materials furnished in the construction project?" The district court instructed the jury as follows with respect to the second provision of the contract:

> In connection with your determination of any overcharge for labor, if you so find, it is your duty to interpret the language in the following portions of the Contract:
>
> 1. "The total price for the Improvements is net cost of all materials and labor plus an 8% profit for any/all materials and labor provided by the Contractor. Prior to the commencement of construction, Contractor will furnish Owner with a name and wage list (Exhibit "A") of those persons directly involved. Contractor

4

> reserves the right to replace, add, or supplant names at his discretion. Hourly wage rates shall not change without approval of Owner."
>
> 2. Exhibit "A" – Wage List/Wilbourne Contract (listing Names and Hourly Wages as admitted in evidence before you).
>
> You must decide its meaning by determining the intent of the parties at the time of the Contract. Consider all the facts and circumstances surrounding the making of the Contract, the interpretation placed on the contract of the parties, and the conduct of the parties.

Appellants objected to the submission of the jury question at trial on the ground that the contract unambiguously provided for a "fixed building rate." The judge overruled appellants' objection and entered judgment on the jury's affirmative answer to the question.

A court's primary concern in construing a written contract is to ascertain and give effect to the parties' true intentions as expressed in the instrument. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract is unambiguous, the court should interpret it as a matter of law and enforce it as written because there is no fact issue of intent for the jury to consider. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If, however, a contract is ambiguous, the parties' intent becomes a fact issue for the jury to decide. *Coker*, 650 S.W.2d at 394.

Whether a contract is ambiguous is a question of law that the court must determine by examining the contract as a whole in light of the circumstances present at the time the contract was executed. *Universal Health*, 121 S.W.3d at 746. A contract is not ambiguous when it is so worded that it can be given a certain or definite meaning. *Id.*; *Phillips Petroleum Co. v. Bowden*,

5

108 S.W.3d 385, 397 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Ambiguity is not created merely when the parties advance conflicting interpretations of the contract. *Universal Health*, 121 S.W.3d at 746. Instead, ambiguity arises when, after applying established rules of construction, the language of the contract is susceptible to more than one reasonable interpretation. *Id.*; *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 679 (Tex. App.—Austin 2003, pet. denied).

At trial, appellant Don Holley conceded that HFE charged the Wilbournes more in "hourly wages" than HFE actually paid the workers per hour; however, Holley argued that HFE did not overcharge the Wilbournes because the "net cost" of labor (reflected by the "hourly wages" in Exhibit "A") included overhead costs for each worker. Specifically, Holley contended that HFE incurred equipment expenses as overhead with respect to the workers.[2] The Wilbournes countered that, based on their communications with Don Holley, they understood the net cost of labor to mean the wages that HFE would actually pay its workers.

The contract identifies Exhibit "A" as one of the "Contract Documents" and provides that "[t]he intent of the Contract Documents is to include all items necessary for the completion of the work, and the work comprises the completed construction of the Improvements, including all

---

[2] Don Holley testified that overhead included the cost of equipment, "such as backhoe, compressors, nail guns, scaffolding, ladders, trailers, roof jacks, on and on and on," but he admitted that HFE owned some of the equipment for which they charged rental fees. Additionally, invoices sometimes included separate charges explicitly for equipment; however, according to appellants, overhead costs were also factored into the cost per worker per hour to arrive at the amount charged to the Wilbournes. Appellants did not keep records detailing how the overhead was actually calculated for each worker. Further, appellants concede that the contract does not contain a provision that allows them to charge the Wilbournes overhead on labor.

necessary labor, materials, and equipment." Another provision states: "The Contractor shall provide and pay for all labor, materials, and equipment . . . ."

When analyzing the contract as a whole, an ambiguity arises as to the meaning of "net cost" of labor. The contract does not define the term "net cost," and it does not contain any references to overhead as part of net cost of labor. Further, although the contract twice references "labor, materials, and equipment," it allots only labor and material costs to the Wilbournes, thereby making it unclear whether the parties intended equipment costs to be part of the "net cost" of material or labor. We are faced with two different interpretations of "net cost" of labor: either it included overhead costs associated with equipment and other things, or it included only the actual cost of labor, i.e., the amount appellants actually paid their workers.[3] To the extent "net cost" of labor was susceptible to more than one reasonable meaning, and thus ambiguous, the parties' intent became a fact issue for the jury to determine. Therefore, the district court did not abuse its discretion in asking the jury to interpret contract language to determine whether appellants overcharged for labor. We overrule appellants' issue that it was reversible error to submit Jury Question Number One.

*Quantum Meruit Cause of Action*

At trial, the district court overruled appellants' objection to the omission of a jury question on quantum meruit. On appeal, appellants argue that the district court committed reversible

---

[3] At trial, the parties vigorously advanced different interpretations of the appropriate cost of labor depending on the meaning of "net cost" of labor.

7

error because appellants pleaded a cause of action in quantum meruit and offered legally sufficient evidence on the cause of action.

Quantum meruit is an equitable theory of recovery that is based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Nagel v. Kentucky Cent. Ins. Co.*, 894 S.W.2d 19, 21 (Tex. App.—Austin 1994, writ denied). It is independent of a contract; therefore, a party may recover under quantum meruit "only when there is no express contract covering the services or material furnished." *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Nagel*, 894 S.W.2d at 21.

In this case, the parties entered into a cost-plus contract, whereby the Wilbournes agreed to pay appellants' net costs of material and labor plus eight percent. Although appellants performed work that varied from the original contract specifications, any changes were covered by the underlying contract.[4] Because all work was done pursuant to an express contract, any amount allegedly owed would not be recoverable in quantum meruit. The district court did not abuse its discretion by failing to submit a jury question on appellants' quantum meruit cause of action. We therefore overrule appellants' second issue.

---

[4] The contract contains a provision entitled "Changes, Deviations, or Extras." That provision states, "Should the owner at any time during the progress of the Work desire any additions, deviations, or omissions from the original plans and contract, he may make such changes, but in so doing shall in no way affect or void the original contract . . . ."

8

**Evidence of Fraud by Barbara Holley**

In their third issue, appellants contend that there was legally insufficient evidence to support the jury's finding that Barbara Holley committed fraud. In reviewing a claim for legal sufficiency of the evidence, this Court considers only the evidence and inferences tending to support the jury's finding and disregards all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). We will uphold the jury's finding if it is supported by more than a scintilla of evidence. *Crye*, 907 S.W.2d at 499. More than a scintilla of evidence exists "when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).

A common-law fraud claim is established by showing proof of the following elements: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

Barbara Holley functioned as a principal and bookkeeper for HFE. As bookkeeper, she was responsible for preparing invoices for the Wilbournes.[5] Don Holley admitted at trial that

---

[5] Don Holley testified that on a weekly or biweekly basis Barbara Holley "prepared a statement format that included any materials that would have been involved during that time span,

9

the invoices consistently represented amounts that exceeded the actual labor and material charges that HFE incurred during construction.  He further testified that HFE did not keep records on the number of hours each employee worked throughout construction (even though HFE billed the Wilbournes per hour per worker) and did not keep records detailing how "overhead" was actually calculated for each worker (even though he argued the inflated invoices represented legitimate "overhead").

This testimony constitutes ample evidence that Barbara Holley made material misrepresentations in the invoices; that when she made the representations, she either knew the representations were false or made them recklessly as a positive assertion without knowledge of their truth; that she intended the Wilbournes to act on the representations by paying the inflated invoice amounts; that the Wilbournes did act in reliance on the representations by paying the full invoice amounts because they believed the invoices to be accurate; and that the Wilbournes were thereby injured by the amount of overcharges for labor and materials.[6]  We therefore overrule appellants' third issue.

---

or at least information regarding it[, such as] . . . all the receipts that [HFE] had for the week and, of course, the labor amounts as well."  He further stated that Barbara Holley was responsible for responding to any questions or concerns the Wilbournes had regarding the invoices.

[6] Following a jury determination of damages, the judgment awarded the Wilbournes $31,018.60 for the amount that HFE overcharged the Wilbournes for labor and materials.

**Award of Appellate Attorney's Fees**

In their fourth issue, appellants contend that this Court should reform the district court's judgment because the award of appellate attorney's fees to the Wilbournes was not made contingent on the Wilbournes' success on appeal.[7] We agree.

This Court has recognized that "any award of attorney's fees on appeal must be conditioned on the receiving party's success." *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 557 (Tex. App.—Austin 1999, pet. denied); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ). However, an unconditional award of appellate attorney's fees does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 586 (Tex. App.—Austin 2003, no pet.); *see also Newberry*, 999 S.W.2d at 557. We sustain appellants' fourth issue and modify the district court's judgment so that the award of appellate attorney's fees is expressly contingent on the Wilbournes' success on appeal.

**Amount of Judgment**

In order to place appellants' final issue in context, it is necessary to understand the substantive form of the judgment, which was divided into five sections. First, the judgment identified the parties and summarized the proceedings. Second, a section entitled "Judgment Against

---

[7] The judgment awards the Wilbournes "reasonable and necessary attorney's fees in the amount of $10,000.00 in the event the judgment is appealed to the Court of Appeals, and a further award of . . . $10,000.00 in the event a Petition for Review is filed with the Supreme Court of the State of Texas."

HFE Development Corporation" ordered that the Wilbournes recover the following amounts from

HFE as damages resulting from HFE's breach of contract:

1. $31,018.60, representing the amount that [HFE] overcharged [the Wilbournes] for labor and materials;

2. $10,000.00 for non-legal professional fees incurred by [the Wilbournes] in discovering and determining the amount of the overcharges for labor and materials, for which damages were awarded above;

3. $67,500.00, representing the cost to repair and/or remediate defects in the materials and/or workmanship, for work performed by [HFE] that was not performed in a good and workmanlike fashion;

4. $7,500.00 for non-legal professional fees incurred by [the Wilbournes] in discovering and determining what work performed by [HFE] had not been performed in a good and workmanlike fashion, for which damages were awarded above; and

5. $20,000.00 for the consequential damages suffered by [the Wilbournes] attributable to [HFE's] failure to complete the work called for by the contract in a timely fashion.

This section of the judgment also ordered that the Wilbournes recover from HFE $127,084.91 as

"reasonable and necessary attorney's fees incurred in pursuing their claims for breach of contract."

Two additional awards of $10,000.00 were ordered in the event the judgment was appealed to this

Court or the supreme court.[8]

The third section of the judgment was entitled "Judgment Against Don Holley and

Barbara Holley" and ordered that the Wilbournes recover from Don Holley and Barbara Holley,

---

[8] We have modified these awards of appellate attorney's fees so that they are contingent on the Wilbournes' success on appeal.

jointly and severally, damages "proximately caused by the fraud the jury found [the Holleys] to have committed by overcharging for labor and materials provided to [the Wilbournes]," in the following amounts:

1. $31,018.60 for overcharges for labor and materials;

2. $10,000.00 for non-legal professional fees incurred by [the Wilbournes] in discovering and determining the amount of the fraud.

The fourth section of the judgment is entitled "Judgment Against Don Holley" and orders that the Wilbournes recover from Don Holley, individually, damages "proximately caused by the fraud that the jury found Don Holley to have committed by misrepresenting that the work being performed for [the Wilbournes] could be performed for $215,000.00, when in fact it could not," in the following amounts:

1. $67,500.00, representing the cost to repair and/or remediate defects in the materials and/or workmanship attributable to work that was performed but that was not performed in a good and workmanlike fashion;

2. $17,500.00 for non-legal professional fees incurred by [the Wilbournes] in discovering and determining the scope of this fraud;

3. $31,018.60 for overcharges for labor and materials; and

4. $20,000.00 for the costs incurred by [the Wilbournes] because the work was not done in a timely fashion.

Additionally, this section ordered that the Wilbournes recover their court costs.

Finally, the judgment included a fifth section entitled "No Double Recovery Permitted." This section limited the Wilbournes' recovery as follows:

13

[The Wilbournes] may recover an [sic] total of only $41,018.60, plus [interest] set forth hereinabove, from: (1) [HFE]; and/or (2) Don Holley and Barbara Holley, jointly and severally; and/or (3) Don Holley, for those damages that the jury found [the Wilbournes] to have suffered because of the overcharges for labor and materials and for the non-legal professional fees incurred in discovering and determining the amounts of these overcharges, for which the jury found: (1) [HFE] liable under a breach of contract theory; (2) [Don] and Barbara Holley jointly and severally liable under a fraud theory; and (3) Don Holley individually liable under a fraudulent misrepresentation theory; and

[The Wilbournes] may recover a total of only $87,500.00, plus [interest] set forth hereinabove, from [HFE] and/or Don Holley, for those damages that the jury found [the Wilbournes] to have suffered because of the failure to perform the work in a good and workmanlike fashion and the consequential damages attributable to the failure to complete the work in a timely fashion, which the jury found [HFE] liable under a breach of contract theory and Don Holley liable under a fraudulent misrepresentation theory.

In their final issue, appellants assert that section five of the judgment—the provision prohibiting double recovery—limits the maximum amount of recovery to $128,518.60. Appellants essentially contend that the Wilbournes are not entitled to recover attorney's fees or court costs merely because section five does not reference either item. We disagree.

A provision against double recovery is intended to prevent claimants from violating the "one satisfaction" rule, which essentially prohibits claimants from recovering twice for the same injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) ("This rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in a single injury."); *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 155 (Tex. App.—Austin 2003, no pet.). In this case, section five is included to limit the damage amounts as found by the jury and awarded in the judgment, not to represent the entirety of the judgment. It guards against the possibility of double recovery that arises from certain duplicative amounts

14

rendered against HFE; Don and Barbara Holley, jointly and severally; and Don Holley, individually. Because attorney's fees are only awarded against HFE and court costs are only awarded against Don Holley, individually, there is no possibility of recovering either item more than once, and it was therefore unnecessary for the court to address double recovery of attorney's fees and court costs in section five.

## CONCLUSION

We conclude that the district court did not commit reversible error as to the jury charge. In addition, we find that there was legally sufficient evidence to support the jury's finding that Barbara Holley committed fraud. We hold that the provision in section five prohibiting a double recovery does not constitute the entire judgment amount awarded. We modify the district court's judgment so that the award of appellate attorney's fees is expressly contingent on the success of the Wilbournes on appeal, and we affirm the judgment as modified.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed:   May 27, 2004

15