**DWFII CORPORATION, d/b/a Falls Chiropractic Health Center, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. 10–20116–CIV.

United States District Court, S.D. Florida.

Dec. 10, 2010.

Amy Beth Maloy, Grossman Roth PA, Key West, FL, Jon Michael Herskowitz, The Herskowitz Law Firm, Martin Ira Berger, Zachary Hicks, Samole, Berger & Hicks, P.A.,

Seth Eric Miles, Grossman Roth PA, Miami, FL, Mark Jeffrey Dearman, Robbins, Geller, Rudman & Dowd LLP, Boca Raton, FL, for Plaintiff.

Benjamine Reid, Amy Lane Hurwitz, Carlton Fields, Miami, FL, Johanna W. Clark, Carlton Fields, P.A., Orlando, FL, for Defendant.

### ORDER ON MOTION FOR CLASS CERTIFICATION

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification, filed July 2, 2010 (the "Motion") (D.E. 42.) Defendant responded on August 13, 2010 (the "Response") (D.E. 62), and Plaintiff replied on August 30, 2010 ("Reply") (D.E. 75.) Also before the Court is Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Class Certification, filed August 18, 2010 (D.E. 68), and Defendant's Motion to Strike Plaintiff's Notice of Other Filing (D.E. 147.)

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

## I. Background

The issue in this case is whether State Farm Mutual Automobile Insurance Company's (State Farm) use of National Correcting Coding Initiative edits to limit providers' reimbursements violates Florida's No–Fault Law, Fla. Stat. § 627.736 (the "No–Fault Statute.")

### A. Parties

State Farm is an insurance carrier that sells No–Fault or Personal Injury Protection ("PIP") coverage (Am.Compl. ¶¶ 6–7.) DWFII Corporation ("DWFII") provides healthcare services to individuals covered under State Farm's No–Fault policies and bills State Farm pursuant to assignments of benefits (Am.Compl. ¶¶ 10–11.)

### B. Statutory Framework

Florida's No–Fault Statute is designed to provide insurance without regard to fault.

Fla. Stat. § 627.731 (2006). Every policy under the No–Fault Statute must provide up to $10,000 for loss sustained as a result of "bodily injury, sickness, disease, or death arising out of ownership, maintenance, or use of a motor vehicle...." Fla. Stat. § 627.736(1).

### 1. Type of Reimbursements Permitted

Subsection (1)(a) provides that insurers must reimburse eighty percent of all "**reasonable expenses** for **medically necessary**" healthcare services (emphasis added). Subsection (5)(a) states that a provider may reimburse "**only reasonable amount[s]**" and only those amounts that appear on an invoice, bill or claim form that has been "**properly completed**" (emphasis added). Subsection 5(d) provides guidelines an insured or her provider must follow in order to submit a properly completed bill.

Pursuant to subsection 4(b), "[p]ersonal injury protection insurance benefits....

> shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same.... **This paragraph does not preclude or limit the ability** of the insurer **to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5).** Such assertion by the insurer may be **made anytime, including after payment of the claim** or after the 30–day time period for payment set forth in this paragraph.

Fla. Stat. § 627.736(4)(b) (emphasis added).

### 2. Permitted Limitations on Reimbursement Amounts

Pursuant to subsection (5)(a)(2), an insurer may limit reimbursement to 80% of "200 percent of the allowable amount under the participating physicians schedule of Medicare Part B." Subsection (5)(a)(3) adds that, for purposes of subparagraph (2), "the applicable fee schedule ... under Medicare is the fee schedule

> in effect at the time the services, supplies, or care was rendered and for the area in

which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

Fla. Stat. § 627.736(5)(a)(3). This means that the applicable fee schedule for maximum charges for the current year must be compared with the applicable schedule for 2007, and the insurer must pay the higher of the two.

Pursuant to subsection (5)(a)(4), a provider may not apply the following three limits on reimbursements:

■ **limitation on the number of treatments** ... [2] **utilization limits** that apply under Medicare or workers' compensation. An insurer ... must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or [3] **limitations on the types or discipline of health care providers** who may be reimbursed for particular procedures or procedure codes.

Fla. Stat. § 627.736(5)(a)(4) (emphasis added).

Section 627.736(5)(b)(1)(e) further provides that "an insurer is not required to pay a claim or charge ... for any treatment that is upcoded, or that is unbundled when such treatment or services should be bundled ..." Unbundling is defined as "an action that submits a billing code that is properly billed under one billing code, but that has been separated into two or more billing codes, and would result in payment greater in amount than would be paid using one billing code." Fla. Stat. § 627.732(15). However, under section 627.736(5)(b)(1)(e) when an insurer

"change[s] codes that it determines to have been improperly or incorrectly upcoded or unbundled" and "make[s] payment based on the changed codes," it must contact or make a "reasonable good faith effort" to "contact the provider and discuss the reasons for the insurer's change and the health care provider's reason for the coding." *See* Fla. Stat. § 627.736(5)(b)(1)(e)

### 3. Actions Brought Under Florida's No-Fault Statute

Pursuant to subsection 10(a), a condition precedent for filing any action for benefits under the No-Fault Statute is that "the insurer must be provided with written notice of an intent to initiate litigation." *See* Fla. Stat. § 627.736(10)(a).

### C. National Correct Coding Initiative Edits

The Centers for Medicare and Medicaid Services developed the National Correct Coding Initiative (NCCI).[1] The NCCI's goal is to "promote national correct coding methodologies and to control improper coding [of healthcare services] leading to inappropriate payment in [Medicare] Part B claims."[2] The purpose of NCCI edits is "to prevent improper payment when incorrect code combinations are reported."[3] NCCI edits exist for a wide range of healthcare services.[4]

A modifier is a two-digit code that further describes the health services performed.[5] Providers may include one or more of the thirty-five available modifiers in their bill to bypass an NCCI edit.[6] For example, a provider may bill for two services in an NCCI code pair and include a modifier that would override the edit and allow a reimbursement for both services.[7]

1. National Correct Coding Initiatives Edits, http://www.cms.gov/NationalCorrectCodInitEd/01_overview.asp#TopOfPage1.

2. *Id.*

3. *Id.*

4. *Id.*

5. Department of Health and Human Services, Office of Inspector General, *Use of Modifier 59 to Bypass Medicare's National Correct Coding Initiative Edits*, i (November 2005), http://www.oig.hhs.gov/oei/reports/oei-03-02-00771.pdf

6. *Id.*

7. *Id.*

## D. Individual and Class Allegations

DWFII alleges that State Farm violates the No–Fault Statute by using NCCI edits to reduce and deny reimbursements to it and similarly situated medical providers (Am. Compl. ¶ 27.) DWFII charged State Farm for services pursuant to the policy assignments of Alex Rodriguez and Christopher Obioha, who both sought treatment at DWFII after sustaining injuries in automobile accidents (Am.Compl. ¶¶ 15–16 & 18–19.) Among the healthcare services DWFII billed State Farm for are those for which the service (therapeutic massage) is coded 97124 (Am.Compl. ¶ 17.) DWFII alleges that pursuant to the No–Fault Statute, State Farm was required to pay it 200% of the Medicare Part B Fee Schedule for the services that DWFII provided to Mr. Rodriguez and Mr. Obioha, respectively; however, State Farm improperly applied an NCCI edit to reduce the reimbursements for the therapeutic massage to zero (Am.Compl. ¶¶ 17 & 21.) DWFII has sued State Farm for breach of contract (Count 1) and declaratory judgment (Count 2) (See Am.Compl. ¶¶ 36–41 & 42–59.)

DWFII seeks an order certifying the following a class:

> All Florida healthcare providers who: (1) submitted a claim to a Defendant for payment under an applicable Florida PIP and/or medical payments policy; (2) had their claims reduced or denied; and (3) a Defendant generated an [Explanation of Review (EOR) ] with a reason code of 318, 319, 322, and/or 323 stating that the basis for the nonpayment of the particular claim was the application of an NCC edit.

Motion at 6.

## II. Legal Standard

■ A Court may certify a class action only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984). A plaintiff seeking class certification carries the burden of proof. *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000).

The plaintiff must prove that Rule 23(a) requirements are met and that at least one of the standards of Rule 23(b) is appropriate for the relief sought. *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1025 (11th Cir.2001).

■ Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g., Rink v. Cheminova, Inc.,* 203 F.R.D. 648, 649 (M.D.Fla.2001) (citing *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[8] Rule 23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). These elements are referred to as "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir.2003). Additionally, a court may only certify a class action if at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir.2000).

Certification of the damage class under Rule 23(b)(3) requires a plaintiff to establish that "the question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Certification of the injunctive class under Rule(b)(2) requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to the class as a whole." Fed.R.Civ.P. 23(b)(2).

▇▇ In determining whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug,* 350 F.3d at 1188 n. 15; *see also Hudson v. Delta Air Lines,* 90 F.3d 451, 457 (11th Cir.1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

### III. Analysis

▇▇ DWFII relies on the theory that every NCC edit that generates an Explanation of Review (EOR) with a reason code of 318, 319, 322, and/or 323 is impermissible without exception under section 627.736(5)(a)(4); thus, State Farm's use of these NCC edits to limit DWFII's and the putative class members' reimbursements entitles DWFII and the class to money damages and declaratory and injunctive relief. State Farm argues that the question of whether these NCC edits are permitted boils down to individual inquiries about whether each provider is even entitled to a reimbursement and whether State Farm's use of a particular NCC edit to reduce or deny a reimbursement is permitted under section 627.736(5)(a)(4) and (5)(b)(1)(e).

Accordingly, State Farm first and foremost argues that the Court cannot certify a damages class under Rule 23(b)(3) because the predominance and superiority requirements are not met. Second, State Farm contends that the Court cannot certify an injunctive class under Rule 23(b)(2) because there exist too many individualized facts relevant to determining the medical necessity for a treatment and the reasonableness of a claim for reimbursement for such a treatment. Third, State Farm argues that DWFII as the putative class representative fails to satisfy the Rule 23(a) prerequisites of adequacy and typicality.

### A. Rule 23(b)(3) Requirements

Class certification of a damages class under Rule 23(b)(3) requires a plaintiff to show that "[1] questions of law or fact common to members of the class predominate over any questions affecting only individual members, and [2] that class action is superior to all other available methods for the fair and effective adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

▇▇ To satisfy the Rule 23(b)(3) predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent–A–Car Systems,* 211 F.3d 1228, 1233 (11th Cir.2000). If the common issues of fact and law "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... relief," then the common issues of fact and law predominate. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir.2004). If after adjudication of the classwide issues, plaintiffs still needs to introduce a "great deal of individualized legal proofs or argue a number of individualized legal points to establish most or all of the elements of their individual claims," Rule 23(b) class certification is inappropriate.

DWFII contends that State Farm's use of NCC edits violates section 627.736 and the common issues of fact and law predominate because "all payments to class members are automatically reduced or denied." (Motion at 16) (emphasis omitted). State Farm argues that because each claim for reimbursement and each EOR is different, the numerous issues subject to individual proof overwhelm the few general issues applicable to the class as a whole.

The common facts that DWFII and the class members share are that they have all provided health care services to State Farm's insureds and that State Farm has automatically applied NCC edits that have generated one or more of the four EORs to reduce or deny their claims for reimburse-

ment. The common legal question is whether State Farm improperly applied NCC edits to reduce or refuse reimbursements. However, as explained in more detail below, the fact that State Farm may have automatically applied NCC edits to every bill that each service provider/putative class member submitted does nothing to establish that any individual provider was entitled to a reimbursement on any particular occasion and that a NCC edit improperly reduced that reimbursement. *See Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir. 2004) (the fact that the defendants conspired to underpay doctors, and that they programmed their computer systems to frequently do so in a variety of ways does nothing to establish that any individual doctor was underpaid on any specific occasion); *Rutstein,* 211 F.3d at 1235 ("Whether Avis maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class."); *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir.1997) (holding that plaintiffs alleging racial discrimination had failed to show "predominance" because proof concerning the existence of a general policy of racial discrimination does not show whether an individual plaintiff was actually discriminated against); *Ramirez v. DeCoster,* 194 F.R.D. 348, 353 (D.Me.2000) (holding that plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate merely by alleging a pattern or practice claim")

**a. Determination of whether a provider is entitled to a reimbursement, and entitled to state a claim under the No–Fault Statute turns on individualized factual issues.**

State Farm argues that individualized factual issues affecting a provider's entitlement to a reimbursement in the first place, such as whether the services performed were medically necessary, whether the reimbursements claimed were reasonable, and whether the bill was properly completed, predominate over the common ones. DWFII contends that factors affecting a provider's entitlement

to reimbursement are irrelevant to its breach of contract claim because by the time State Farm applies an NCC edit to a claim, it has already determined that the provider is entitled to reimbursement. The Court disagrees with DWFII's analysis. Pursuant to subsection 4(a) of the No–Fault Statute, an insurer can assert that a claim was "unrelated, was not medically necessary, or was unreasonable ... at *any time, including after payment of the claim.*" Fla. Stat. § 627.736(4)(b) (emphasis added). This means that even if State Farm previously determined that a provider was entitled to a reimbursement and paid all or part of that reimbursement, it retains the right to review its decision at any time and recoup any portion of the reimbursement based on the factors listed in subsections (1)(a), 4(a) and 5(a). In fact, this Court has already noted in this case that "there is nothing ... preventing Defendant from asserting a lack of 'reasonableness' as an affirmative defense" for why it did not or should not fully reimburse a provider (Order on Motion to Dismiss, D.E. 18, at 4.) Accordingly, individualized evidence affecting DWFII and the putative class members' entitlement to individual reimbursements is very much relevant to determining whether State Farm breached any of its insurance agreements by wrongfully failing to pay an individual claim under the No–Fault Statute.

As was the case in *Klay,* regardless of whether State Farm followed a policy of automatically applying NCC edits to every bill, State Farm has the right and ability to introduce individualized evidence to prevail on each breach of contract claim. Each putative class member, for each alleged underpayment, i.e. each alleged breach of contract, will have to prove the following details about its entitlement to reimbursement: that the insured had valid insurance coverage and his benefits were unexhausted, that the provider actually performed the services for which it billed; that the treatment(s) the provider performed was "medically necessary" pursuant to section 627.736(1)(a), that the provider billed for "reasonable amount[s]" pursuant to section 627.736(5)(a), and that the bill the provider submitted was properly completed pursuant to section 627.736(5)(d). There are

no common issues of fact that relieve each plaintiff of a substantial portion of this individual evidentiary burden. *Cf. In re Terazosin Hydrochloride Litigation,* 220 F.R.D. 672, 694 (S.D.Fla.2004) ("[W]hen there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.") (internal quotations omitted).

In addition to arguing that individualized factual issues affecting a provider's entitlement to reimbursement outnumber the common ones, State Farm also argues that embedded in DWFII's breach of contract claim is the individualized factual issue of whether a provider has served a demand letter on State Farm and is thus entitled to state a claim under the No–Fault Statute. DWFII cites the Supreme Court decision *Shady Grove Orthopedic Assocs. P.A. v. Allstate Ins. Co.* to contend that the demand letter requirement conflicts with Rule 23 by affecting the procedural right to maintain a class action and thus like any state statute, the requirement must give way to Rule 23. *See* —— U.S. ——, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010). DWFII's use of *Shady Grove* is misguided. The demand letter requirement section 10(a) of the No–Fault statute can be distinguished from the New York state statute at issue in *Shady Grove,* because that statute specifically affected the procedural right to maintain a *class action,* whereas the demand letter requirement here affects only the right to maintain an *action under the No–Fault Statute itself.* In other words, the question of whether DWFII can maintain a class action in this case is governed exclusively by Rule 23. The demand requirement in subsection 10(a) does not conflict with Rule 23; it goes only to assessing whether the predominance requirement of Rule 23 is met.

The Court finds that an assessment of whether each plaintiff class member has met the pre-suit demand requirement pursuant to subsection 10(a) is yet another individualized question of fact, which taken together with the question of whether DWFII is entitled to a reimbursement in the first place, outweighs the common issues identified by DWFII.[9]

**b. Determination of whether State Farm has a valid unbundling defense also depends on individualized issues of fact that predominate over the common one.**

■ Even if individualized issues affecting a provider's entitlement to a reimbursement and entitlement to state a claim under the No–Fault Statute do not outweigh the general ones, the predominance element required for class certification is not automatically met. Each provider also will have to demonstrate that the common issues of fact affecting an assessment of whether State Farm has a valid unbundling defense for using NCC edits to reduce or deny reimbursements predominates over the individual ones. *See* Fla. Stat. § 627.736(5)(a)(4) and (5)(b)(1)(e). State Farm argues that a determination of whether it has a valid unbundling defense hinges on individualized evidence about the type of procedures performed that overwhelm the common ones. DWFII reasons that every NCC edit at issue "refuses payment for the second of two procedures performed on the same day," thus individualized evidence about procedures "[is] wholly irrelevant" (*See* Reply at 4.)

DWFII's reasoning is flawed. Even assuming that the NCC edits at issue in this case all operate to refuse payment for the second of two procedures performed on the same day, an individualized, fact-intensive analysis of the corresponding procedure for each billing code to which an edit has been applied is required to assess whether DWFII

9. The Court notes that whether each plaintiff class member has met the pre-suit demand requirement is likely to also affect the numerosity element required for class certification. DWFII has not asserted that the "thousands of Florida healthcare providers harmed by Defendants' practices" have all met the pre-suit requirements qualifying them to state a claim under the No–Fault Statute and thus serve as class members (*See* Motion for Class Certification at 7.) Accordingly, DWFII has not demonstrated that the class is so numerous that joinder of all members is impracticable. *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003).

has impermissibly unbundled procedures. For example, an inquiry into whether the procedure for treating lacerations to the cheeks and the procedure for treating lacerations to the forehead are distinct and unrelated enough to justify two separate (unbundled) billing codes is markedly different from an inquiry into whether manual therapy and massage therapy are distinct and unrelated enough to justify the same. In other words, since no two procedures are performed under identical circumstances, it is virtually impossible to assess whether DWFII has impermissibly unbundled a set of procedures without analyzing the justification for each procedure at issue. Moreover, an individualized factual inquiry will be required to determine whether State Farm complied with the latter portion of subsection 5(b)(1)(e) by contacting or making a reasonable good faith effort to contact each provider whose reimbursement(s) it reduced or denied based on a changed billing code.

In sum, a determination of whether State Farm breached its contracts with DWFII and the putative class of providers by refusing to pay for the "second of two procedures performed on the same day" is a fact-specific inquiry into whether each provider was entitled to a reimbursement in the first place, whether each provider was entitled to state a claim under the No–Fault Statute, and whether each provider impermissibly unbundled. Accordingly, the individual factual and legal determinations involved in such inquiries defeat predominance.

## 2. Superiority

In determining whether the plaintiff has met the superiority element, courts consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be en-

countered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

DWFII contends that superiority is satisfied because it would be wasteful and judicially redundant for class members to bring separate actions, and a class action would be easier to manage than numerous separate actions. State Farm argues that an inquiry into the appropriateness of even one NCC edit would require a file by file, bill by bill review that would make management of a class action difficult. It further argues that numerous NCC actions filed in county courts throughout Florida indicate that members of the class have an interest in pursuing their actions individually.

Although DWFII correctly notes in its Motion for Class Certification that the predominance and superiority element are "intertwined," DWFII's arguments ignore the individualized nature of the predominance inquiry and corresponding superiority inquiry in this case. See Perez v. Metabolife, 218 F.R.D. 262, 273 (S.D.Fla.2003). As the Court has already noted, an inquiry into a provider's entitlement to a reimbursement and entitlement to state a claim under the No–Fault Statute would require the Court to scrutinize individually the details of each class member's claim for reimbursement and whether each provider served State Farm with a pre-suit demand letter. These factors coupled with determining whether State Farm has an unbundling defense make management of a class action containing thousands of such claims difficult. Furthermore, an individual class member has an interest in bringing its own action. The class member who is entitled to a reimbursement, entitled to state a claim under the No–Fault statute, and whose reimbursement was limited by an NCC edit for which State Farm had no unbundling defense would surely favor bringing a separate action rather than joining with class members who are not entitled to a reimbursement, not entitled to state a claim under the No–Fault statute, or those who impermissibly unbundled billing codes. Accordingly, DWFII has failed to meet its burden to establish superiority thus has failed to satisfy the Rule 23(b)(3) requirements.

## B. Rule 23(b)(2) Requirements

When deciding whether to certify the injunctive class under Rule 23(b)(2), the Court "must determine (1) whether Defendant has acted on grounds generally applicable to the class as a whole, and if so, (2) whether declaratory or final injunctive relief is the appropriate primary remedy [ ]." *Jones v. American General Life and Acc. Ins. Co.,* 213 F.R.D. 689, 698 (S.D.Ga.2002) (citing *In Re Managed Care Litig.,* 209 F.R.D. 678 (S.D.Fla.2002)). When, as here, a plaintiff seeks damages in addition to equitable relief, injunctive class certification is only appropriate if the money damages are "incidental to the requested injunctive or declaratory relief." *In re Consol. Non–Filing Ins. Fee Litigation,* 195 F.R.D. 684, 692 (M.D.Ala. 2000) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998)). Money damages are "incidental" only when class members would be "automatically entitled" to them once class-wide litigation is established. *Id.*

DWFII argues that the Court should certify the injunctive class because State Farm's use of NCC edits to reduce or deny reimbursements is automatic and uniform; thus State Farm has acted on grounds generally applicable to the class of health care providers as a whole. State Farm contends that the presence of disparate factual circumstances precludes injunctive class certification.

DWFII and the putative class members seek both money damages and injunctive relief, however, DWFII has failed to demonstrate that the money damages are "incidental." Money damages are incidental if a court can calculate them using objective standards and not depend on subjective differences of each class member. *Allison,* 151 F.3d at 415. The plaintiffs should not have to introduce new and substantial legal or factual issues, nor engage in complex individualized determinations, and a court should not have to hold additional hearings to resolve the disparate merits of each individual's case. *Id.*

Damages for State Farm's underpayment or nonpayment of reimbursements is not a group injury requiring a group remedy. *See Id.* at 413 ("We know, then, that monetary relief "predominates" under Rule 23(b)(2) . . . when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case."). A finding of class-wise liability in this case would not "automatically" entitle class members to a fixed, uniform damages recovery. *See Id.* at 415. Instead, the calculation of money damages would require individual resolution of the following questions relevant to each claim for reimbursement: what were the services performed; were the services medically necessary; what were the total reimbursements claimed; were the claims for reimbursements reasonable; and how much of the reimbursement did each edit reduce. The plaintiff class members would have to introduce new factual details, such as whether each treatment was actually performed and whether each bill was properly completed. As a result, the Court would be unable to use objective standards to calculate money damages and would have to hold hearings to resolve these disparate issues. Accordingly, the money damages in this action are not "incidental" to the injunctive and declaratory relief thus the Court must deny injunctive class certification under Rule 23(b)(2).

## C. Rule 23(a) Factors of Adequacy and Typicality

### 1. Adequacy

The adequacy element requires representative parties to "fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). This requirement involves an inquiry into whether the "plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation, and whether the plaintiff has interests antagonistic to those of the rest of the class." *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985).

DWFII contends that it is an adequate class representative for the following reasons: its counsel has experience handling complex class action lawsuits; and DWFII's interests are aligned with the class because the its claims and those of the putative class

members arise out of the same operative facts and depends on the same legal theories. State Farm argues that the DWFII chiropractor who billed for Mr. Rodriguez and Mr. Obioha's treatments, Dr. Ferguson, violated chiropractic billing standard and coding protocols, thus DWFII is an inadequate class representative.

The Court finds that DWFII is an adequate class representative. State Farm confuses the adequacy element with the typicality element with its argument that Dr. Ferguson's billing practices makes DWFII an inadequate class representative. Accordingly, State Farm fails to persuasively argue how DWFII is an inadequate class representative. A review of its counsel's resume reveals that he has the requisite knowledge and experience to lead the litigation. Moreover, DWFII's interest in seeking damages and injunctive relief for State Farm's use of NCC edits is not at odds with the interest of the rest of the class.

**2. Typicality**

■■■■ To fulfill the typicality requirement, the representative plaintiff's claims must be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). The representative plaintiff's interest must be aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. *General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citation omitted); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). The typicality requirement is met when in proving its case, the representative plaintiff establishes the element needed to prove the class members' case. *See*

*Brooks v. Southern Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D.Fla.1990); *see also Hillis v. Equifax Consumer Serv., Inc.,* 237 F.R.D. 491, 499 (N.D.Ga.2006) (citation omitted) ("Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.")

■■■ DWFII asserts that its claims are typical of the class because they arise out of State Farm's use of NCC edits against it and providers in the putative class to automatically deny reimbursements for medical services. State Farm argues that DWFII is not entitled to a reimbursement in the first place because it never performed the medical services for which it billed, abused the modifier 59, impermissibly unbundled services, failed to provide proper documentation for several claims, and submitted incomplete and inaccurate bills; thus DWFII is not typical. State Farm also argues that it is subject to the unbundling defense.

DWFII has failed to satisfy the typicality requirement. Its generalized assertions that State Farm applied NCC edits to both its claims for reimbursement and the putative class members' claims does not automatically establish that the putative class members share the same interests or suffer the same injury as DWFII. To prove that State Farm inappropriately applied NCC edits to DWFII's reimbursement and that DWFII had a right to state a claim under the No–Fault Statute, DWFII would have to demonstrate that it was entitled to the reimbursement in the first place, that State Farm had no set-off or unbundling defense for limiting the reimbursement, and that DWFII met the pre-suit demand requirements to state a claim under the No–Fault Statute.[10]

---

10. On December 2, 2010, Plaintiff filed a Notice of Filing Defendants' Post–Briefing Admissions, in Support of Class Certification (D.E. 133.). On December 7, 2010, Defendant filed a Motion to Strike Plaintiff's Notice of Other Filing in response. In Plaintiff's Notice, it lists several admissions Defendant made after briefing on the Motion for Class Certification was completed. Among them were Defendant's admissions that the treatments DWFII performed were necessary and related to the accident, that the bills DWFII submitted were in correct form, and that DWFII

rendered and performed all the services for which it billed.

Plaintiff fails to explain in its Notice how Defendant's admissions impact class certification. First, even if Plaintiff can prove that (based on Defendant's admissions) it may be entitled to a reimbursement, this information does not prove that the NCC edit applied to its claims for reimbursement was impermissible or that Defendant did not have an unbundling defense. Second, demonstrating that Plaintiff may be entitled to a reimbursement does not prove that general factual and legal issues predominate over individual-

Every member of the putative class would have to engage in a similar analysis, however, the analysis would involve different policyholders, different medical services, different billing codes, and different defenses; thus an entirely different set of facts and legal conclusions. Therefore, even if DWFII could prove that it was entitled to a reimbursements for the services performed on Mr. Rodriguez and Mr. Obioha, that State Farm had no unbundling defense for reducing the reimbursement, and that DWFII sent State Farm pre-suit demand letters, proving its own case would not necessarily prove that other providers were entitled to a reimbursement, that State Farm had no unbundling defense for reducing each reimbursement, and that the other providers sent State Farm pre-suit letters. Accordingly, DWFII's claims are not typical of the class, thus it has failed to satisfy all four prerequisites of Rule 23(a).

## IV. Conclusion

For the foregoing reasons, the Court, in its discretion, denies the Motion for Class Certification. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification (D.E. 42) is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Class Certification (D.E. 68) and Defendant's Motion to Strike Plaintiff's Notice of Other Filing (D.E. 147) are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of December, 2010.

ized ones and that Plaintiff's claims are typical of those of the putative class members. The Court would still have to engage in separate analysis of individualized factual details about each putative class member's entitlement to reimbursement, which would defeat predominance and typicality.